[No. A132087. First Dist., Div. Five. Mar. 8, 2012.]

K.G., an Incompetent Person, etc., et al., Plaintiffs and Appellants, v. LARRY MEREDITH, as Public Guardian, etc., Defendant and Respondent.

**COUNSEL**

Morton P. Cohen for Plaintiffs and Appellants.

Daniel P. Brzovic and Michael J. Stortz for Disability Rights California as Amicus Curiae on behalf of Plaintiffs and Appellants.

Patrick K. Faulkner, County Counsel, Edward J. Kiernan and Steven M. Perl, Deputy County Counsel, for Defendant and Respondent.

OPINION

**BRUINIERS, J.**—Petitioners K.G. and Donna H. were determined to be gravely disabled persons under the Lanterman-Petris-Short Act (LPS Act) (Welf. & Inst. Code, § 5000 et seq.)[1] and were subject to conservatorships. Orders establishing the conservatorships divested them of the right to make their own decisions on medical treatment for their grave disabilities, including involuntary administration of antipsychotic medication. (§ 5357, subd. (d); hereafter, section 5357(d).) Together with the California Association of Mental Health Patients' Rights Advocates (CAMHPRA; collectively, Petitioners),[2] they filed a petition for a writ of mandate and declaratory relief against their conservator, the Marin County Public Guardian (Public Guardian), alleging that the Public Guardian had a "customary practice" of seeking and obtaining conservatorship orders imposing such a legal disability without an appropriate judicial determination of personal decisional incapacity.

The Public Guardian revised the pleading forms used in conservatorship proceedings, and the original conservatorships of both individual petitioners expired. The trial court found the petition to be moot and dismissed it. We do not agree that the matter is moot.

We conclude Petitioners are entitled to declaratory relief on two issues clearly raised and adequately briefed in this appeal. We agree with Petitioners and amicus curiae that medical decisional disabilities may not be imposed upon a conservatee without proper notice and the opportunity for a hearing, or without a judicial determination of decisional incapacity. We therefore reverse and remand to the trial court for grant of declaratory relief on these issues and for consideration of whether mandamus relief may also be appropriate.

## I. BACKGROUND

### A. *The LPS Act*

The LPS Act provides, among other things, for judicial commitments for involuntary evaluation and treatment of "gravely disabled" persons with

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] CAMHPRA states that it is an "organization composed of statutorily mandated county patients' rights advocates [citation], attorneys from public interest legal service agencies, consumers of mental health services, private attorneys, and other representatives of mental health consumers dedicated to promoting and advocating for the legal rights and treatment interests of individuals with mental health disabilities."

By order of September 6, 2011, we granted the application of Disability Rights California, the designated federal protection and advocacy agency for people with disabilities for the State of California (§§ 4900–4906) to appear as amicus curiae.

psychiatric disabilities by means of a conservatorship. (§ 5350 et seq.) As relevant here, a "gravely disabled" person is one who, "as a result of a mental disorder, is unable to provide for his or her basic personal needs for food, clothing, or shelter." (§ 5008, subd. (h)(1)(A); see *Conservatorship of John L.* (2010) 48 Cal.4th 131, 142 [105 Cal.Rptr.3d 424, 225 P.3d 554].) A gravely disabled person may be involuntarily detained for increasing periods of treatment upon increasingly demanding showings of disability. (§§ 5150 et seq. [72-hour detention], 5250 et seq. [14-day detention], 5270.15 [30-day detention]; see also §§ 5260 [detention for additional 14 days if suicidal], 5352.3 [detention for additional three days to file petition for temporary conservatorship].) Thereafter, a gravely disabled person may be placed under a conservatorship for renewable periods of one year. (§ 5350 et seq.) Generally, the individual is placed under a temporary conservatorship while a petition for a one-year conservatorship is pending and before a hearing on the one-year conservatorship takes place. (See § 5352.1.) The temporary conservatorship may last as long as 30 days in any case, and as long as six months in cases where the proposed conservatee requests a court hearing or jury trial on the issue of grave disability in the one-year conservatorship proceeding. (*Ibid.*) If no other appropriate conservator is available, the county public guardian may serve as conservator. (Prob. Code, § 2920, subd. (a); see Welf. & Inst. Code, § 5350 [Prob. Code, div. 4 procedures apply to LPS conservatorships unless LPS Act otherwise provides].)

■ The LPS Act "scrupulously protects the rights of involuntarily detained mentally disordered persons. [Citations.]" (*Keyhea v. Rushen* (1986) 178 Cal.App.3d 526, 534 [223 Cal.Rptr. 746] (*Keyhea*).) "Section 5325.1 generally states that '[p]ersons with mental illness have the same legal rights and responsibilities guaranteed all other persons by the Federal Constitution and laws and the Constitution and laws of the State of California unless specifically limited by federal or state law or regulations' and then sets out a nonexclusive list of rights including '[a] right to dignity, privacy, and humane care' (§ 5325.1, subd. (b)) and '[a] right to be free from harm, including unnecessary or excessive physical restraint, isolation, medication, abuse, or neglect. Medication shall not be used as punishment, for the convenience of staff, as a substitute for program, or in quantities that interfere with the treatment program.' (§ 5325.1, subd. (c); see, §§ 5005, 5327.) . . . [¶] [Moreover, i]t is one of the cardinal principles of LPS that mental patients may not be presumed incompetent solely because of their hospitalization." (*Riese v. St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303, 1313–1315 [271 Cal.Rptr. 199], fn. omitted (*Riese*); see also §§ 5331, 5326.5.)

## B. *Involuntary Medication and Treatment Under the LPS Act*

■ The LPS Act specifically authorizes the court to designate certain "disabilities" to which a conservatee may be subject, including decisional disabilities relating to medical treatment. (§ 5357.) These include depriving the conservatee of "[t]he right to refuse or consent to treatment related specifically to the conservatee's being gravely disabled"[3] (§ 5357(d)), and of "[t]he right to refuse or consent to routine medical treatment unrelated to remedying or preventing the recurrence of the conservatee's being gravely disabled" (§ 5357, subd. (e); hereafter, section 5357(e)). Treatment for a grave disability may include administration of antipsychotic medications.[4] In the absence of a court order imposing these disabilities or an emergency,[5] a conservator may not require a conservatee to receive medical treatment. (§ 5358, subd. (b); hereafter, section 5358(b).)

In *Keyhea*, this court held that sections 5357(d) and 5358(b) implied that a conservatee has the right to consent to or refuse medical treatment for a grave disability absent a judicial determination that the individual lacks the capacity to rationally decide whether to refuse or consent to such medication (i.e., a finding of decisional incapacity) or an emergency. (*Keyhea, supra,* 178 Cal.App.3d at pp. 534–536, 540–542 [applying statutory LPS procedures to administration of psychotropic drugs to incarcerated state prisoners].) In *Riese*, our colleagues in Division 2 of this appellate district similarly held that, absent a judicial determination of decisional incapacity or an emergency, the LPS Act also did not permit antipsychotic medication of involuntarily institutionalized patients[6] without their informed consent. (*Riese, supra,* 209 Cal.App.3d at p. 1320.) Following *Riese*, the Legislature codified capacity hearing procedures for such involuntary detainees. (§§ 5325.2, 5332–5334, 5336.)

The *Riese* court expressly declined to address constitutional arguments, but our Supreme Court has since held that the right of a competent adult to refuse medical treatment, including the right to refuse antipsychotic drugs, is not

---

[3] The conservatee still retains the right to refuse psychosurgery and electroconvulsive therapy. (§ 5325.) Other provisions of the LPS Act govern when those types of treatment may be provided. (§§ 5326.6 [psychosurgery], 5326.7 [electroconvulsive therapy].)

[4] Antipsychotic medication means "any medication customarily prescribed for the treatment of symptoms of psychoses and other severe mental and emotional disorders." (§ 5008, subd. (*l*).)

[5] " 'Emergency' means a situation in which action to impose treatment over the person's objection is immediately necessary for the preservation of life or the prevention of serious bodily harm to the patient or others, and it is impracticable to first gain consent. . . ." (§ 5008, subd. (m).)

[6] *Riese* was a class action brought on behalf of psychiatric patients involuntarily committed to mental health facilities under sections 5150 and 5250. (*Riese, supra,* 209 Cal.App.3d at p. 1308.)

only statutorily recognized in the LPS Act, but is grounded as well in both state constitutional and common law rights of privacy and personal autonomy. (*In re Qawi* (2004) 32 Cal.4th 1, 14, 16–19 [7 Cal.Rptr.3d 780, 81 P.3d 224] (*Qawi*).) As *Qawi* explains, the right to refuse treatment, including antipsychotic medication, is not absolute but is limited by countervailing state interests such as the state's *parens patriae* interest " 'in providing care to its citizens who are unable . . . to care for themselves.' " (*Qawi, supra*, 32 Cal.4th at p. 15, quoting *Addington v. Texas* (1979) 441 U.S. 418, 426 [60 L.Ed.2d 323, 99 S.Ct. 1804].) Nevertheless, "*parens patrie* may be used only to impose unwanted medical treatment on an adult when that adult has been adjudged incompetent. [Citation.]" (*Qawi*, at pp. 15–16.)
■ Consequently, an involuntarily committed gravely disabled person retains the right to refuse psychotropic medication in nonemergency situations unless "the person is determined to be . . . incapable of making rational decisions about his [or her] own medical treatment . . . ." (*Id.* at p. 20.) The Supreme Court confirmed that *Keyhea* and *Riese* correctly interpreted the LPS Act. (*Qawi*, at pp. 16–19.)

C. *The Petition for Writ of Mandate and Declaratory Relief*

Petitioners contend that the Public Guardian routinely seeks imposition of section 5357(d) disabilities on temporary and one-year LPS conservatees without a judicial determination of decisional incapacity and, in the case of temporary conservatorship, without meaningful notice and an opportunity to be heard.[7]

The petition alleged that the Public Guardian had a "customary practice of seeking and obtaining orders which deprive [LPS] Act conservatees of fundamental rights to consent to or refuse certain medical treatment, including powerful antipsychotic drugs, without any judicial determination of decisional incapacity." The petition asserted that many CAMHPRA members represented temporary and one-year conservatees in Marin County who were

---

[7] Petitioners also contend the Public Guardian routinely seeks imposition of *routine* medical treatment disabilities under section 5357(e) without necessary judicial findings. Petitioners, however, do not separately address in their briefs the issue of what finding is required before this disability may be imposed. Instead, they almost exclusively focus their discussion on involuntary antipsychotic medication under section 5357(d). We deem the section 5357(e) issue forfeited. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115–1116 [75 Cal.Rptr.2d 27] (*Guthrey*) [appellate court may deny claim on appeal that is unsupported by legal argument applying legal principles to the particular facts of the case on appeal].) Petitioners also do not argue, and we do not address, imposition of other disabilities which the court may impose under section 5357, such as voting disqualification and driver's license restrictions (§ 5357, subds. (c) & (a)).

subjected to involuntary antipsychotic medication without a judicial determination of decisional incapacity due to the Public Guardian's challenged practices, as were both K.G. and Donna H.[8] Petitioners asserted five causes of action. They alleged that, by seeking and obtaining court orders that deprived conservatees of the right to consent to or refuse treatment in nonemergency situations without a judicial determination of incapacity, the Public Guardian deprived conservatees of their rights under the LPS Act (first cause of action); their right to privacy under the California Constitution (second cause of action) and California common law (third cause of action); their right to equal protection of the laws under the California Constitution (fourth cause of action); and their "right to an evidentiary capacity adjudication [under] the LPS Act and Equal Protection clause of the California Constitution" (fifth cause of action). In support of these claims for relief, the verified petition described the Public Guardian's practices in general,[9] described the conservatorship proceedings of K.G. and Donna H. as illustrative of those practices, and attached documentary exhibits.

---

[8] At the time the petition was filed, on February 14, 2011, a temporary conservatorship had been established for K.G. in December 2010, and both medical treatment disabilities were imposed during the period of temporary conservatorship. Also at the time the petition was filed, a one-year conservatorship had been established for Donna H. in March 2010, and both medical treatment disabilities were imposed during the period of conservatorship. Both K.G. and Donna H. were being involuntarily medicated with antipsychotic drugs at the time the petition was filed.

[9] The petition alleged prior efforts to obtain compliance with the statutory requirement of adjudication of decisional incapacity, including litigation against the Public Guardian in the conservatorship case of Jacqueline B. (*Conservatorship of Jacqueline B.* (Nov. 19, 2009, A121847) [nonpub. opn.] (*Jacqueline B.*).) As relevant here, another division of this court held in *Jacqueline B.* that the trial court "must make separate findings of incapacity to support imposition of the special disabilities" listed in section 5357, including the medical treatment disabilities. The court vacated imposition of disabilities on Jacqueline B. because "[t]here is nothing in the record to suggest that the requisite findings of incapacity were ever made, or even considered, by the trial court. . . . The first mention of the imposition of special disabilities in the record is the entry of the order that imposes them . . . . The order repeats the court's finding that the conservatee was gravely disabled, but it makes no separate findings with respect to incapacity underlying the special disabilities. . . . [¶] . . . [¶] . . . Before we can presume the trial court acted properly [and made the separate findings], there should be some indication in the record that the court was, at a minimum, aware of the findings it was required to make in order to impose the special disabilities."

The parties dispute whether it is appropriate to cite this unpublished appellate opinion. (See Cal. Rules of Court, rule 8.1115(a).) Petitioners argue the opinion is citable because the court's decision has collateral estoppel effect on the Public Guardian in this action. (Cal. Rules of Court, rule 8.1115(b)(1).) This is incorrect because nonmutual offensive collateral estoppel is not available against a government entity. (*Helene Curtis, Inc. v. Assessment Appeals Bd.* (1999) 76 Cal.App.4th 124, 133 [90 Cal.Rptr.2d 31].) We nevertheless may appropriately cite the decision to explain the factual background of the case and not as legal authority. We have previously suggested this is an appropriate use of unpublished opinions that does not violate rule 8.1115 of the California Rules of Court. (See *Conrad v. Ball Corp.* (1994) 24 Cal.App.4th 439, 443–444, fn. 2 [29 Cal.Rptr.2d 441] [discussing Cal. Rules of Court, former rule 977].)

Petitioners requested (a) a judicial declaration stating that "absent an emergency as defined in Section 5008[, subdivision] (m), LPS temporary and full one year conservatees are entitled to consent to or refuse the administration of antipsychotic medications and/or routine medical treatment unless there has been a judicial adjudication, with representation, specifically determining their incapacity to make decisions regarding such administration"; (b) a peremptory writ of mandate ordering that "absent an emergency as defined in Section 5008[, subdivision] (m), LPS temporary and full one year conservatees may not be nonconsensually medicated with antipsychotic medications or routinely medically treated unless there has been a judicial adjudication with representation specifically determining their incapacity to make decisions regarding such administration"; and (c) costs and attorney fees pursuant to Code of Civil Procedure section 1021.5.

## D. *Motion for Peremptory Writ of Mandate and Declaratory Relief*

Petitioners filed a motion seeking a peremptory writ of mandate and declaratory relief. In response, the Public Guardian argued the petition was moot because the temporary conservatorship for K.G. and the one-year conservatorship for Donna H. in effect at the time the petition was filed had expired or been terminated.[10] The Public Guardian argued the petition was also moot because he had changed his practices in response to the *Jacqueline B.* decision and had prepared new forms for use in seeking temporary and one-year conservatorships. The Public Guardian also argued that writ relief was inappropriate because Petitioners did not object to or appeal the orders they now contend were improperly imposed, they did not seek performance of a ministerial duty, they had a plain, speedy and adequate remedy at law, and there was no legal basis for the relief they sought.

In reply, Petitioners argued the expiration or termination of K.G.'s and Donna H.'s conservatorships did not render the action moot because the petition did not seek individual relief on their behalf, but merely described their conservatorship proceedings as illustrative of the Public Guardian's ongoing practices challenged in the petition. Petitioners also asserted that the Public Guardian's revised forms still did not comply with legal requirements.

## E. *Trial Court Ruling*

The trial court found the petition to be moot. "[K.G.]'s conservatorship was dismissed on 2/16/11. Therefore the relief requested by the within writ is

---

[10] On February 16, 2011, the superior court had dismissed the petition to establish a one-year conservatorship for K.G. and terminated her temporary conservatorship. Donna H.'s one-year conservatorship expired in March 2011, and the court established a renewed one-year conservatorship, again imposing both medical treatment disabilities.

moot. . . . [¶] Similarly, the temporary orders issued in the Donna H. matter have now been replaced with new orders, issued on 3/24/11. The orders challenged in this action have expired or have been superseded, so the relief sought is moot." Apparently finding that the changes in the Public Guardian's procedures also rendered the petition moot, the court wrote, "Additionally, [Public Guardian] alleges that[,] in response to the 'Jacqueline B.' case, it has changed its procedures to comply with the law." The court expressly declined to rule on the Public Guardian's other arguments in opposition to the petition.

## II. DISCUSSION

" ' "In reviewing the trial court's ruling on a writ of mandate (Code Civ. Proc., § 1085), the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial evidence. [Citation.] However, the appellate court may make its own determination when the case involves resolution of questions of law where the facts are undisputed. [Citation.]" [Citation.]' [Citations.]" (*Morris v. Harper* (2001) 94 Cal.App.4th 52, 58–59 [114 Cal.Rptr.2d 62] (*Morris*).) Similarly, in a declaratory relief action questions of fact are generally reviewed for substantial evidence and questions of law are reviewed de novo. (See *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800 [35 Cal.Rptr.2d 418, 883 P.2d 960].) Trial court rulings on mootness are reviewed de novo where, as here, they are decided on undisputed facts. (See *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1582 [120 Cal.Rptr.3d 665] [applying de novo review to ripeness ruling based on undisputed facts].)

We conclude that the action is not moot under either of the theories advanced by the Public Guardian, and that Petitioners present valid claims at least for declaratory relief. (Code Civ. Proc., § 1060.)

### A. *Mootness*

#### 1. *Expiration of Conservatorship Orders for K.G. and Donna H.*

The Public Guardian argues that the action became moot upon the expiration of the conservatorship orders for K.G. and Donna H.[11] We disagree.

---

[11] The Public Guardian also frames this issue as a question of standing to seek mandamus relief. At the time the petition was filed, K.G. and Donna H. were subjected to the medical treatment disabilities, which had been imposed pursuant to the procedures Petitioners challenge in this action. They were also being involuntarily medicated with antipsychotic drugs under the authority of those disabilities. They thus had standing (i.e., a beneficial interest) to challenge those practices. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 [129 Cal.Rptr.2d 811, 62 P.3d 54] ["[t]o be entitled to relief, [a petitioner] must show

■ An appeal is not moot if it raises issues that are capable of repetition yet avoiding review. (*Conservatorship of Carol K.* (2010) 188 Cal.App.4th 123, 133 [115 Cal.Rptr.3d 343]; see also *In re Lemanuel C.* (2007) 41 Cal.4th 33, 38, fn. 4 [58 Cal.Rptr.3d 597, 158 P.3d 148] [commitment order expired]; *Conservatorship of Wendland* (2001) 26 Cal.4th 519, 524, fn. 1 [110 Cal.Rptr.2d 412, 28 P.3d 151] [conservatee died]; *Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1011, fn. 5 [36 Cal.Rptr.2d 40, 884 P.2d 988] [conservatorship expired].) Both K.G. and Donna H. are residents of Marin County with chronic mental disorders that have led to repeated involuntary commitment and conservatorship proceedings. Indeed, a renewed one-year conservatorship was established for Donna H. in March 2011, again imposing medical treatment disabilities. Thus, it is likely that the issues raised in this appeal will arise again in future conservatorship proceedings involving these individual Petitioners. Moreover, because Petitioners challenge what they allege are the ongoing practices and policies of the Public Guardian, there is a reasonable likelihood the alleged violations will continue to affect other proposed LPS conservatees. Because of the short terms of temporary and one-year conservatorships and the lengthy process of a typical appellate proceeding, it is likely that any future litigation raising the issues on appeal here would also become technically moot and thus potentially evade appellate review.

Because this action raises important issues of public interest that are capable of repetition yet evading review, we decline to dismiss the appeal as moot on the ground that the conservatorships of the individual Petitioners have expired.

### 2. *"Compliance" by the Public Guardian*

The Public Guardian argues, and the trial court found, that the action became moot when the Public Guardian revised his conservatorship forms in response to the appellate court decision in *Jacqueline B.* It does not appear, however, that the trial court determined whether the revised forms complied

---

the [respondent] has a clear, present and ministerial duty to [perform a duty] and that [the petitioner] has a clear, present and beneficial right to performance of that duty entitling her to a writ of mandate"].) Any change in that status raises issues of mootness.

We note that the petition asserted that many CAMHPRA members represented temporary and one-year conservatees in Marin County who were subjected to involuntary antipsychotic medication without a judicial determination of decisional incapacity due to the Public Guardian's challenged practices. This appears to be directed to CAMHPRA's independent standing to challenge the Public Guardian's practices in this action. However, on appeal Petitioners do not rely on CAMHPRA's standing to challenge the trial court's mootness ruling.

with legal requirements; rather, the court apparently viewed the action as moot simply because the procedures had changed. We conclude the purported change in procedures did not moot Petitioners' action.

First, the Public Guardian did not establish that the procedures had in fact changed.[12] He submitted certain revised forms to the trial court, but explained that consultation was required with his own personnel, hospital staff, and doctors before implementing the forms. Significantly, he failed to produce a revised form of order to include required findings for imposition of decisional disabilities. Finally, he has taken the position in the trial court and here that the changes made in the forms are not legally mandated. Absent proof of implemented changes in procedures, the court could not deem the action mooted by virtue of such purported changes.

Second, the fact of changed procedures alone would not moot the case. The Public Guardian cites *State Bd. of Education v. Honig* (1993) 13 Cal.App.4th 720 [16 Cal.Rptr.2d 727] (*Honig*) for the proposition that writ relief is inappropriate when a public official has complied or clearly intends to comply with the law. (*Id.* at pp. 746–747 [refusing to direct respondent to submit guidelines and reports where the evidence showed that the guidelines and reports had already been submitted or were not yet due].) It is true that "the court will not issue an extraordinary writ of mandamus merely to enable a party to prove a point or to excoriate a public official for a mistake he stands ready to correct. [Citations.]" (*Morris, supra,* 94 Cal.App.4th at pp. 59–60; see also *East Bay Mun. Utility Dist. v. Department of Forestry & Fire Protection* (1996) 43 Cal.App.4th 1113, 1126 [51 Cal.Rptr.2d 299] [trial court did not abuse its discretion in declining to issue a writ of mandate where the defendant clearly demonstrated its intent to comply with the law].) But *Honig* does not hold, and we are aware of no authority that holds, that a change in procedures alone is sufficient to render an action moot without a further showing that the changes are responsive to the issues raised in the petition and that the amended procedures comply with the law.[13] A contrary rule would allow a respondent to continually delay compliance with the law simply by continually revising its practices.

---

[12] Petitioners' motion, filed July 27, 2011, seeking judicial notice of forms and procedures used by the Public Guardian in proceedings subsequent to the hearing in this matter is denied. (See *In re Francisco W.* (2006) 139 Cal.App.4th 695, 706 [43 Cal.Rptr.3d 171] [ordinarily, appellate court will not consider events that occurred after rendition of judgment in the trial court].)

[13] There may be a case where the change is so significant that the entire context of the legal issues presented is substantially different and the case should be dismissed as moot, but that is not the circumstance here.

Further, *Honig* only addresses the appropriateness of mandamus relief, and not declaratory relief. The Public Guardian cites no authority requiring dismissal of the declaratory relief claims because of any change in his procedures. Petitioners reasonably argue that a flawed effort at compliance with the law should not result in dismissal of a declaratory relief action where there is still an "actual controversy relating to the legal rights and duties of the respective parties." (Code Civ. Proc., § 1060.)

B. *Merits of the Petition*

1. *Petition Does Not Seek an Advisory Opinion*

The Public Guardian argues that a review of the merits of Petitioners' challenges, particularly as directed to the sufficiency of the forms used, is inappropriate because it will lead to an improper advisory opinion. (See *Coronado Cays Homeowners Assn. v. City of Coronado* (2011) 193 Cal.App.4th 602, 607–608 [123 Cal.Rptr.3d 90] [actual controversy " ' "is one which admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts" ' "].) He argues the revised forms and procedures reasonably can be evaluated only in the context of an actual conservatorship proceeding with all forms completed, thus providing an adequate factual background to evaluate compliance with legal requirements. We disagree.

The practices and procedures Petitioners challenge do not vary based on the unique facts of any particular conservatorship proceeding. An action for declaratory relief is an appropriate means of challenging an alleged "overarching" policy or practice of an agency where there is an actual and present controversy over the policy. (*Californians for Native Salmon etc. Assn. v. Department of Forestry* (1990) 221 Cal.App.3d 1419, 1427–1429 [271 Cal.Rptr. 270] (*Native Salmon*), citing Code Civ. Proc., § 1062.) In holding that the policy at issue in *Native Salmon* was properly challenged in a declaratory relief action, we relied in part on the fact that "declaratory relief would avoid a multiplicity of actions, i.e., a large number of mandate proceedings challenging specific [administrative] approvals all raising identical or nearly identical questions concerning [the agency's] policies. . . . As against the piecemeal review of similar issues by individual [administrative] challenges, the present action appears singularly economical." (*Native Salmon*, at p. 1430; see also *Union of American Physicians & Dentists v. Kizer* (1990)

223 Cal.App.3d 490, 503–504 [272 Cal.Rptr. 886]; *Venice Town Council, Inc. v. City of Los Angeles* (1996) 47 Cal.App.4th 1547, 1565–1566 [55 Cal.Rptr.2d 465]; *Clovis Unified School Dist. v. Chiang* (2010) 188 Cal.App.4th 794, 808–809 [116 Cal.Rptr.3d 33].) In *Edward W. v. Lamkins*, the court similarly entertained a mandamus petition challenging a regular practice of a public guardian in seeking temporary LPS conservatorships. (*Edward W. v. Lamkins* (2002) 99 Cal.App.4th 516, 520 [122 Cal.Rptr.2d 1] (*Edward W.*).) Here too, the issues Petitioners seek to pursue, at least to the extent we find them adequately presented and briefed, are appropriate for our consideration in this appeal.

### 2. Issues Adequately Presented for Review

We conclude only two issues raised in the petition and the Petitioners' briefs are adequately presented and briefed to permit meaningful appellate review.

The petition seeks a "judicial adjudication" of decisional incapacity before a conservatee is denied his or her right to refuse or consent to routine medical treatment or treatment related to his or her grave disability, absent a medical emergency. The petition, however, does not identify the allegedly essential elements of such an "adjudication." The body of the petition refers to several alleged deficiencies in the Public Guardian's procedures, including inadequate notice, lack of representation, insufficient allegations in conservatorship petitions, failure to obtain a conservatorship investigation report before seeking disabilities, and inadequate findings in proposed court orders. Similarly, on appeal, Petitioners invoke the requirements of notice, allegations, proof and a court finding as elements of an adjudication of decisional incapacity. However, Petitioners do not separately analyze the legal issues underlying each of these requirements as applied to LPS conservatorship proceedings.

Instead, Petitioners focus their legal arguments on the requirement of a judicial finding of decisional incapacity before a section 5357(d) disability is imposed, and on the illegality of ex parte proceedings used to impose the disability during periods of temporary conservatorship. These are the only two issues that are clearly defined in Petitioners' briefs and properly supported by legal argument. We deem the other issues forfeited.[14] (See *Guthrey, supra,* 63 Cal.App.4th at pp. 1115–1116.)

---

[14] Amicus curiae provides a thorough legal analysis of the question whether proposed conservatees are entitled to evidentiary hearings on imposition of a section 5357(d) disability. However, Petitioners have expressly disclaimed on appeal any challenge to the *sufficiency* of the evidence the Public Guardian submits on the issue as a regular practice, or an argument that a proposed conservatee is always entitled to evidentiary *hearing* on the issue of decisional incapacity. In their reply brief they fault the Public Guardian for misinterpreting the aim of

### 3. *Finding Requirement for Imposition of Section 5357(d) Disabilities*

While the parties agree that the trial court must make a finding of decisional incapacity before imposing the section 5357(d) medical disability, they disagree about how that finding must be reflected in the record. Petitioners seek an express finding of decisional incapacity in orders that impose medical disabilities. They fault the Public Guardian for submitting proposed court orders that fail to include such an express finding and note that in K.G.'s and Donna H.'s conservatorship proceedings the court approved submitted orders that included no such finding. The Public Guardian represented at oral argument that his revised proposed order form now includes the phrase "for good cause shown" before language imposing the disabilities, but acknowledges it is otherwise unmodified on this issue.

The Public Guardian correctly notes that there is no clear statutory requirement that the court make an express finding of decisional incapacity before imposing the medical treatment disabilities. (See *Conservatorship of George H.* (2008) 169 Cal.App.4th 157, 165–166 [86 Cal.Rptr.3d 666]; *Conservatorship of Walker* (1989) 206 Cal.App.3d 1572, 1578 [254 Cal.Rptr. 552].) However, the record must disclose that the trial court was aware of the finding it was required to make before imposing the disabilities, that it considered the evidence proffered on the issue, and that it in fact made the finding. (See *Walker*, at p. 1578 [reversing an order imposing special disabilities because the basis for it was unclear].) We see no reason why this requirement would not apply equally in temporary as well as one-year conservatorship proceedings.

In *Qawi, supra*, 32 Cal.4th 1, the Supreme Court articulated the incapacity standard as a determination that the gravely disabled person is "incapable of making rational decisions about his [or her] own medical treatment" (*id.* at p. 20), and quoted with apparent approval *Keyhea*'s description of the standard as " ' "the conservatee lacks the mental capacity to rationally understand the nature of the medical problem, the proposed treatment and the attendant risks." ' [Citation.]" (*Id.* at p. 18.) The court also adopted *Riese*'s

---

their appeal and clarify, "It is not the evidence which is questioned by [P]etitioners, although it must clearly and convincingly support the finding[;] it is the finding" (fn. omitted), and "the issue here is not whether the *evidence* is sufficient or not to support an eventual specific adjudication of decisional incapacity but whether there is such an adjudication." They argue on appeal the court must find decisional incapacity "whether there is a hearing requirement or not." We conclude Petitioners have abandoned the issue. Amicus curiae cannot revive an argument or seek relief Petitioners have abandoned. (See *California Assn. for Safety Education v. Brown* (1994) 30 Cal.App.4th 1264, 1274–1275 [36 Cal.Rptr.2d 404]; *Mercury Casualty Co. v. Hertz Corp.* (1997) 59 Cal.App.4th 414, 424–425 [69 Cal.Rptr.2d 9] [particularly inappropriate to address issue raised by amicus curiae if issue was expressly abandoned by party].)

language that courts considering whether a gravely disabled person is incapable of making medical treatment decisions must consider: " '(a) whether the patient is aware of his or her situation (e.g., if the court is satisfied of the existence of psychosis, does the individual acknowledge that condition); (b) whether the patient is able to understand the benefits and the risks of, as well as the alternatives to, the proposed intervention . . . ; and (c) whether the patient is able to understand and to knowingly and intelligently evaluate the information required to be given patients whose informed consent is sought [citation] and otherwise participate in the treatment decision by means of rational thought processes.' " (*Qawi*, at p. 18, quoting *Riese, supra*, 209 Cal.App.3d at pp. 1322–1323.)

▮ Petitioners are entitled to a judicial declaration that, before a trial court may impose a medical disability pursuant to section 5357(d), the court must find that the conservatee or proposed conservatee is incapable of making rational decisions about medical treatment related to his or her own grave disability, that is, lacks the mental capacity to rationally understand the nature of the medical problem, the proposed treatment, and the attendant risks. In doing so, the court must consider the *Riese* factors, i.e., (a) whether the patient is aware of the nature of his or her grave disability; (b) whether the patient is able to understand the benefits and the risks of, as well as the alternatives to, the proposed intervention; and (c) whether the patient is able to understand and to knowingly and intelligently evaluate the information required to be given patients whose informed consent is sought and otherwise participate in the treatment decision by means of rational thought processes. To permit meaningful review, the record must reflect that the court was aware of this legal standard, that it considered evidence relevant to the standard, and that it made a finding utilizing that standard.

While we grant declaratory relief, we must remand for the trial court to consider whether mandamus relief should be granted. We do so for two reasons. First, remand will give the trial court an opportunity to consider whether the Public Guardian has taken, or will take, necessary action to comply with the law. Second, we recognize that the decisional incapacity finding is the superior court's responsibility, regardless of the forms submitted by the Public Guardian. The trial court is in the best position to determine in the first instance whether mandamus relief is appropriate.

### 4. *Notice and an Opportunity to Be Heard in Temporary Conservatorships*

Petitioners argue that temporary conservatees are denied due process as to the imposition of the section 5357(d) medical treatment disability during periods of temporary conservatorship. The Public Guardian defends his

current practices. Because Petitioners do not clearly identify the procedures they contend the Public Guardian should follow at the temporary conservatorship stage and do not provide a legal analysis as to such procedural protections, we limit our review to the issue of whether the Public Guardian's current procedure satisfies due process requirements and do not attempt to define all procedural due process requirements that may apply.

█ " ' "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations.]" ' [Citation.]" (*Edward W., supra*, 99 Cal.App.4th at p. 529.) " 'The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending "hearing." ' [Citation.]" (*Conservatorship of Moore* (1986) 185 Cal.App.3d 718, 727 [229 Cal.Rptr. 875].)

Petitioners presented evidence that, in the temporary conservatorship proceedings for K.G. and Donna H., and as a matter of regular practice by the Public Guardian, the section 5357(d) medical disability was imposed after notice to the proposed conservatee that the disability might be imposed, but without service on the proposed conservatee of a petition alleging decisional incapacity, without service of declarations offering evidence in support of a finding on this issue, without legal representation, without a hearing, and without an affirmative indication of the proposed conservatee's consent to imposition of the disabilities. Only after establishment of the temporary conservatorship and imposition of the section 5357(d) disability did temporary conservatees receive appointed counsel and the petition with supporting declarations. Nothing in the Public Guardian's revised procedures suggests a change in this practice, which the Public Guardian continued to defend at oral argument.

The Public Guardian contends that these procedures provide adequate due process. That is, he argues a section 5357(d) disability may be imposed if the proposed conservatee is given five days' notice that the disabilities might be imposed, has access to legal assistance, and does not affirmatively object. He specifically contends that statutory and case law permit establishment of temporary conservatorships that include decisional disabilities ex parte and contends it is appropriate to do so as a matter of regular practice.[15] We conclude that the practice violates due process.

---

[15] The Public Guardian conflates the concepts of ex parte proceedings and proceedings without an evidentiary hearing in his arguments on appeal. He argues, "To disallow imposition of the [medical treatment] disabilities *ex parte*, especially the drug treatment disability, would be tantamount to disallowing the establishment of temporary conservatorships ex parte and

■ Because involuntary psychotropic medication infringes on an individual's right to privacy and personal autonomy, a proposed conservatee has a right to due process before the section 5357(d) disability may be imposed. (*Christopher A., supra,* 139 Cal.App.4th at pp. 613–614; see also *Edward W., supra,* 99 Cal.App.4th at p. 529 [establishment of temporary LPS conservatorships implicates due process].) In *Christopher A.,* a one-year conservatorship proceeding, the court found that due process required the proposed conservatee's *personal* consent to imposition of a decisional disability.[16] (*Christopher A.,* at pp. 613–614.) The consent may be provided in person by a proposed conservatee attending a court hearing or by the conservatee's attorney who has verified that the conservatee consents to the disability (*Conservatorship of Tian L.* (2007) 149 Cal.App.4th 1022, 1026–1027, 1031 [57 Cal.Rptr.3d 382] (*Tian L.*); see also *Conservatorship of Deidre B.* (2010) 180 Cal.App.4th 1306 [103 Cal.Rptr.3d 825]), but the attorney may not consent on the conservatee's behalf without the conservatee's actual consent.

In stark contrast, the Public Guardian contends here that the proposed conservatee's consent to a section 5357(d) disability may be inferred from the

---

would result in an enormous waste of scarce public resources *if every temporary conservatorship required an evidentiary hearing.*" (Italics added.) Similarly, the Public Guardian claims to "have provided everything Petitioners request, save for providing an evidentiary hearing at the temporary conservatorship stage to impose disabilities." An ex parte proceeding is a proceeding that does not afford the opposing party notice and an opportunity to be heard on the requested relief. A proceeding is not ex parte simply because it does not include an evidentiary hearing. The issue before us is not whether an evidentiary hearing would be required to establish an LPS conservatorship, but rather whether *decisional disabilities* under the LPS Act may be imposed without adequate notice and at least an opportunity to be heard on the issue. Moreover, "[t]he court must *separately* determine . . . the disabilities imposed on the conservatee . . . . (§§ 5357, 5358.)" (*Conservatorship of Christopher A.* (2006) 139 Cal.App.4th 604, 612 [43 Cal.Rptr.3d 427], italics added (*Christopher A.*).)

[16] Once a conservatorship is established, antipsychotic drugs may be forcibly administered based upon a judicial determination alone. (*People v. Fisher* (2009) 172 Cal.App.4th 1006, 1016 [91 Cal.Rptr.3d 609].) *Christopher A.* involved a stipulation by counsel to imposition of the disabilities by the court, following a jury verdict finding the conservatee gravely disabled. (*Christopher A., supra,* 139 Cal.App.4th at p. 608.) The court concluded that "a stipulated judgment approved by the conservatee's attorney and adopted by the court after no formal hearing on the issues of placement, disabilities, and powers of the conservator is not a constitutionally sound safeguard against error" even though there was evidentiary support for the judgment. (*Id.* at p. 613.) "A proposed conservatee is at risk of substantial deprivation of his or her liberty interests for *at least* a period of one year. [Citation.] To allow the conservatee's attorney to waive the right to a hearing and agree to the extent of the deprivation without the express consent of the conservatee is contrary to the principles of procedural due process. A waiver of the right to a hearing on these issues eliminates a procedural safeguard already in place. Therefore, we conclude that before accepting a stipulated judgment on placement, disabilities, and conservator powers, the court on the record must consult with the conservatee to instruct him or her on the consequences of the stipulation and obtain the conservatee's express consent to the stipulation on those issues." (*Ibid.,* fn. omitted.) We recognize that in *Christopher A.* there was an express statutory right to the hearing, and the conservatee was already before the court with counsel.

proposed conservatee's failure to affirmatively object to a notice that the disability might be imposed, even though the conservatee is gravely disabled according to the Public Guardian's moving papers, is unrepresented by counsel or a trained patient's advocate (although he or she has been provided contact information for those persons), and has not been informed about the limits of the court's power to impose the disability (i.e., the decisional incapacity legal standard). The Public Guardian cites *Tian L., supra*, 149 Cal.App.4th 1022, as authority for ex parte proceedings, but as Petitioners aptly observe, an unrepresented and ill-informed proposed conservatee's failure to object to a proposed temporary conservatorship which may also include decisional disabilities is not equivalent to an express waiver and consent by one represented and advised by counsel, as occurred in *Tian L.*

The Public Guardian correctly notes his practice does not violate Probate Code section 2250.2, which governs LPS temporary conservatorship proceedings. (See Prob. Code, §§ 2250.2, 2250.8.)[17] The statute provides, "Unless the court for good cause otherwise orders, not less than five days before the appointment of the temporary conservator, notice of the proposed appointment shall be personally delivered to the proposed conservatee." (Prob. Code, § 2250.2, subd. (c).) A petition to establish a temporary conservatorship must "state facts that establish good cause for appointment of the temporary conservator" and the "court, upon that petition or any other showing as it may require, may appoint a temporary conservator of the person or estate or both, to serve pending the final determination of the court upon the petition for the appointment of the conservator." (Prob. Code, § 2250.2, subd. (b).) Probate Code section 2250.2 does not require the petition to be served on the proposed conservatee, and it does not discuss imposition of disabilities such as the section 5357(d) medical disability.

However, due process requirements apply regardless of whether they have been codified by the Legislature and a practice that technically complies with a statute does not necessarily comport with due process. (See, e.g., *Edward W., supra*, 99 Cal.App.4th at p. 544 [although statute permits waiver of notice in seeking temporary conservatorships, routine practice of seeking notice waivers violates due process].) We note that, in contrast to the Probate Code section 2250.2 procedure, the Legislature has imposed more rigorous procedural requirements in a variety of analogous circumstances. Non-LPS temporary conservatorships established under the Probate Code are subject to much more stringent statutory procedural regulation. (See Prob. Code, §§ 2250, 2250.4, 2250.6.)[18] Similarly, the statutes governing establishment of

---

[17] The LPS Act provides that Probate Code conservatorship procedures apply to LPS conservatorships except as otherwise provided in the LPS Act. (§ 5350.)

[18] In 2006, the Legislature enacted the Omnibus Conservatorship and Guardianship Reform Act, which added sections 2250.4 and 2250.6 to the Probate Code also dealing with non-LPS

a one-year LPS conservatorship (which may include imposition of the § 5357(d) decisional disability) (§§ 5350–5358),[19] and those governing involuntary antipsychotic medication of LPS involuntary detainees (§§ 5325.2, 5332) provide for substantially greater procedural protections for the conservatee/detainee. For example, section 5325.2 specifically recognizes the right of a person detained pursuant to section 5150, 5250, 5260, or 5270.15 to refuse treatment with antipsychotic medication, and permits administration of antipsychotic medication, only if "that person does not refuse that medication following disclosure of the right to refuse medication" (§ 5332, subd. (a)), or if the detainee refuses "only when treatment staff have considered and determined that treatment alternatives to involuntary medication are unlikely to meet the needs of the patient, and upon a determination of that person's incapacity to refuse the treatment, in a hearing held for that purpose." (§ 5332, subd. (b).)

The Public Guardian argues the differences among these statutes reflect deliberate legislative intent not to provide greater due process requirements for LPS temporary conservatees. However, the Legislature cannot ignore constitutional requirements. For purposes of due process analysis, we see no rational basis for distinguishing involuntary antipsychotic medication pursuant to section 5357(d) during a temporary conservatorship, which may last

---

temporary conservatorships. (Stats. 2006, ch. 493, §§ 16, 17, 36, operative July 1, 2007.) The sections provided, inter alia, that the proposed temporary conservatee attend the hearing to establish the conservatorship subject to certain exceptions (Prob. Code, § 2250.4) and that a court investigator inform the proposed conservatee of the nature, purpose, and effect of the conservatorship, of his or her rights to oppose the proceeding, attend the hearing, have a jury trial, and representation by counsel (Prob. Code, § 2250.6, subds. (a)(2), (b)(2)). These reforms would have more closely aligned non-LPS temporary conservatorship procedures with those for one-year conservatorships. The statutes were subsequently amended to provide that the superior court was not required to implement these procedures until the Legislature appropriated funds to do so. (Prob. Code, §§ 2250.4, subd. (e), 2250.6, subd. (e), as amended by Stats. 2011, ch. 10, §§ 17, 18, eff. Mar. 24, 2011.)

[19] "The procedures for establishing a [one-year] conservatorship include a number of requirements pertaining to notice, hearing and trial rights, and other matters. Specifically, the petition for appointment of a conservator of the person and the citation for conservatorship must be served upon the proposed conservatee at least 15 days before the scheduled hearing date, and the proposed conservatee must be given notice of the privileges and rights subject to deprivation as part of the conservatorship. (§ 5350; Prob. Code, §§ 1823, 1824.) A hearing must be held within 30 days of the date of the petition, and the court must 'appoint the public defender or other attorney for the . . . proposed conservatee within five days after the date of the petition.' (§ 5365.) The proposed conservatee 'shall have the right to demand a court or jury trial on the issue whether he or she is gravely disabled,' but must do so before or within five days following the hearing on the conservatorship petition. (§ 5350, subd. (d).) The party seeking imposition of the conservatorship must prove the proposed conservatee's grave disability beyond a reasonable doubt, and a jury verdict finding such disability must be unanimous. [Citation.]" (*Conservatorship of John L., supra,* 48 Cal.4th at p. 143.)

from 30 to 180 days, from involuntary antipsychotic medication during a period of involuntary LPS detention, which may last from 72 hours to 30 days or more. (See *Riese, supra,* 209 Cal.App.3d at p. 1320 [it would be anomalous to conclude that conservatees have right to refuse treatment without a court order, but involuntary detainees do not].) Moreover, neither party has demonstrated that the differences among the various statutory procedures are the result of deliberate legislative intent.

 The notice provided by the Public Guardian to the proposed conservatees here did not describe the legal standard for imposition of the disability nor did it require any separate response. It provided contact information for the public defender's and patient's advocate's office, but did not ensure representation. The notices in the record do not set forth a date, time and place for a hearing on the petition or, in the alternative, a date the temporary conservator will be appointed if no objection is interposed. The revised notice form submitted by the Public Guardian is not materially different. The revised physician's *declaration* form prompts the declarant to provide evidence on each of the three *Riese* factors, but there is no indication that, contrary to the Public Guardian's prior practice, this declaration form itself will be served on the proposed conservatee before the court imposes the section 5357(d) disability. We do not believe that mere absence of objection by an unrepresented party to an inadequate notice given by the Public Guardian can be regarded as the equivalent of "informed consent" to involuntary medication. (See *Riese, supra,* 209 Cal.App.3d at p. 1320.)

 We find that the current practice of imposing a section 5357(d) disability provides inadequate notice and opportunity to be heard and therefore violates due process.[20] For the reasons stated *ante*, we remand for the trial court to consider the appropriateness of mandamus relief.

### III. Disposition

The trial court's May 3, 2011 order denying Petitioners' petition for a writ of mandate and request for declaratory relief as moot is reversed. On remand, the court shall vacate the order, grant declaratory relief, and conduct further

---

[20] We again emphasize that we do not address here what type of hearing or what evidentiary showing may be required if objection is made. Petitioners and amicus curiae assert that other jurisdictions provide *Riese*-type hearings for imposition of medical decisional incapacities, even in temporary conservatorships (citing Super. Ct. L.A. County, Local Rules, rule 8.51; Super. Ct. San Diego County, Local Rules, rule 4.18.5). Because we have found that the issue has been forfeited, we express no view on whether such procedures are required.

proceedings on the petition for a writ of mandate consistent with the views expressed in this opinion. Petitioners are entitled to recover their costs on appeal.

Simons, Acting P. J., and Needham, J., concurred.