Filed 3/14/23  Conservatorship of Bryan B. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| Conservatorship of the Person of BRYAN B. | |
| PUBLIC GUARDIAN OF CONTRA COSTA COUNTY,<br><br>        Petitioner and Respondent,<br><br>v.<br><br>BRYAN B.,<br><br>        Objector and Appellant. | A166229<br><br>(Contra Costa County Super. Ct. No. P2000426) |

In August 2022, the trial court reappointed a conservator for Bryan B. under the Lanterman-Petris-Short Act (LPS Act; Welf. & Inst. Code, § 5000 et seq.; all statutory references are to this code) and removed his right to make medical decisions regarding his grave disability, including his right to refuse prescribed psychotropic medication.  Bryan appeals, contending insufficient evidence supports the order depriving him of his right to refuse such medication.  We affirm.

## BACKGROUND

In July 2020, the trial court found Bryan gravely disabled, appointed the Public Guardian of Contra Costa County (Public Guardian) as conservator of Bryan's person, and empowered the Public Guardian to place

1

him in a locked facility and make medical decisions on his behalf relating to his grave disability. Thereafter — most recently in June 2022 — the Public Guardian petitioned to be reappointed as conservator and requested the court limit Bryan's right to refuse or consent to medical treatment, including psychotropic medication. Bryan opposed the petition. At an August 2022 bench trial, the court admitted several exhibits, including Bryan's medical records. His conservator, psychologist Melinda Shrock, testified as an expert in evaluating grave disability. She diagnosed Bryan with schizophrenia and a mood disorder, the symptoms of which prevent him from being able to provide for his food, clothing, or shelter. He is currently housed in a locked medical facility where he is administered several psychiatric medications. Bryan has aggressive outbursts and experiences delusions; he also has difficulty with basic conversation — more than once, he couldn't remember what Shrock said, which she attributed to "an interruption of his thought process" or a "preoccupation with voices."

Shrock opined Bryan is gravely disabled because of his schizophrenia and mood disorder. He lacks an understanding of his mental illness — he "does not believe he's mentally ill." He also lacks insight into his need for psychiatric medication — he "does not believe he needs" medication, and he has expressed a desire to discontinue taking it. Bryan requires supervision to ensure he takes his medication — on one occasion he threatened violence against anyone who tried to inject him with antipsychotic medicine.

At the conclusion of trial, the trial court found beyond a reasonable doubt that Bryan remained gravely disabled as a result of a mental disorder. It reappointed the Public Guardian as conservator of Bryan's person for a one-year period and, as relevant here, precluded him from refusing treatment regarding his grave disability, including psychotropic medication.

## DISCUSSION

Bryan's sole contention on appeal is that insufficient evidence supports the trial court's order depriving him of his right to refuse psychotropic medication. We disagree.

A trial court may establish or renew a conservatorship under the LPS Act if a person is "gravely disabled," meaning the person — because of a mental health disorder — is unable to provide for their basic personal needs for food, clothing, or shelter. (§§ 5350, 5008, subd. (h)(1)(A).) It may also impose various legal "disabilities" on the conservatee, including a limitation on the conservatee's right to refuse or consent to treatment related to their grave disability. (§ 5357, subd. (d); *Conservatorship of S.A.* (2020) 57 Cal.App.5th 48, 55 (*S.A.*).) By itself, a finding of grave disability does not justify imposing an order authorizing involuntary medical treatment. (*S.A.*, at p. 55.) Such an order is appropriate only if the moving party presents clear and convincing evidence the conservatee is incompetent to give or withhold informed consent. (*Ibid.*) In determining whether to impose an order restricting a conservatee's right to refuse or consent to treatment, the court must consider whether the conservatee is aware of their situation; whether they can understand the benefits and risks of — and alternatives to — the proposed treatment; and whether they can understand and evaluate the information necessary for informed consent and participate in the treatment decision using a rational thought process. (*In re Qawi* (2004) 32 Cal.4th 1, 14, 17–18; *S.A.*, at p. 56.) We review an order restricting a conservatee's right to refuse or consent to treatment for substantial evidence, taking into account the clear and convincing standard of proof. (*S.A.*, at p. 56.) We do not, however, reweigh the evidence. (*Ibid.*; *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005, 1008.)

3

Substantial evidence supports the restriction on Bryan's right to refuse or consent to treatment related to his grave disability, including his right to refuse psychotropic medication. The Public Guardian offered undisputed evidence Bryan has schizophrenia and a mood disorder, yet he denied having a mental illness or needing to take prescribed antipsychotic medication for that illness. It also offered uncontroverted evidence Bryan needed "extensive support" to keep up with his medication regimen, and that he had difficulty understanding basic conversation. Thus, the record amply supports a conclusion by clear and convincing evidence Bryan did not understand his situation or the benefits and risks of treatment, and that he could not intelligently evaluate information about treatment or rationally participate in treatment decisions. (*S.A.*, *supra*, 57 Cal.App.5th at p. 56; *Conservatorship of D.C.* (2019) 39 Cal.App.5th 487, 494–495; *Conservatorship of Amanda B.* (2007) 149 Cal.App.4th 342, 349–351.)

Bryan's arguments to the contrary are unavailing. For example, he points to the absence of evidence that he has refused to take his psychiatric medication and asserts the restriction is unnecessary while he is in a locked facility. This argument misses the point. Bryan's grudging compliance with his medication regimen in a supervised setting does not undermine the undisputed evidence he is incompetent to give or withhold informed consent. He also briefly suggests that depriving him of the ability to consent to or refuse treatment prevents him from demonstrating in future conservatorship proceedings he is not gravely disabled. Not so. In a petition to reappoint a conservator pursuant to the LPS Act, the Public Guardian must show Bryan is unable to provide for his basic personal needs for food, clothing, or shelter as a result of a mental disorder. (§§ 5350, 5008, subd. (h)(1)(A).) Providing necessary treatment to a gravely disabled conservatee now does

4

not lessen the Public Guardian's burden if it files a future petition.  Finally, the restriction on Bryan's right to refuse or consent to treatment related to his grave disability — imposed at the conclusion of a bench trial — does not violate his right to due process.  (Compare *K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 181–185.)

## DISPOSITION

The August 2022 order is affirmed.

_____
Rodríguez, J.

WE CONCUR:


_____
Fujisaki, Acting P. J.


_____
Petrou, J.


A166229