Filed 2/28/25  Conservatorship of the Person of J.M. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| Conservatorship of the Person of J.M. | H051497<br>(Santa Clara County<br>Super. Ct. No. 1-23-MH-050528) |
| MARY ANN WARREN, as Public Guardian, etc.,<br><br>      Petitioner and Respondent,<br><br>      v.<br><br>J.M.,<br><br>      Objector and Appellant. | |

After finding appellant J.M. to be gravely disabled under the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.; unspecified statutory references are to this code), the trial court appointed the Santa Clara County Public Guardian as conservator in a one-year conservatorship that expired by operation of law in August 2024.  (§ 5361.)  J.M. contends insufficient evidence supported the trial court's imposition of special disabilities removing his right to enter into contracts and right to consent to or refuse routine medical treatment during the conservatorship.  We will dismiss this appeal as moot because the conservatorship has expired and we find no exception to mootness applies.

## I.    FACTS AND PROCEDURAL BACKGROUND

The following factual summary is derived from the conservatorship petition, supporting documents and hearing testimony.  J.M. is 55 years old.  He has never been married and has no children.  His parents and siblings are deceased.  He owns no significant financial assets.  J.M. has been diagnosed with severe schizophrenia; his symptoms include delusions, hallucinations, grandiosity, paranoia, poor impulse control, poor insight, disorganized thought process and assaultive behavior.

At a *Riese*[1] competency hearing, J.M.'s treating psychiatrist testified that J.M. believes he owns a successful pest-control business and "five million homes" in Gilroy, where he purports to live with his wife and twin daughters and plans to build a guest house for his parents.  He maintains he has been kidnapped, "set up" and confined in a retirement home (actually a psychiatric facility) by two men who stole his driver's license and his substantial retirement savings.  He has also claimed to be Jesus and that he has been kept against his will because his doctor does not believe in Jesus.

J.M. denies suffering from any mental illness, refuses to take prescribed anti-psychotic medication, and becomes angry and physically aggressive when doctors attempt to discuss his mental illness with him.  The treating psychiatrist opined that J.M.'s delusions prevent him from rationally participating in treatment decisions.

This conservatorship originated from J.M.'s arrest on charges of stalking (Pen. Code, § 646.9, subd. (a)).  J.M. was alleged to have violated a civil harassment order by following the protected person and repeatedly showing up at her home, looking inside the windows, attempting to open the front door, and threatening to kill her when she told him to stay away.  J.M. was found not competent to stand trial (Pen. Code § 1370) and was committed to Atascadero State Hospital for competency restoration.  After competency was deemed unrestorable, J.M. was transferred to Santa Clara County Main Jail, where

---

[1]  *Riese v. St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303.

he was evaluated and found to " 'represent a substantial danger of physical harm to others as a result of mental defect, disease, or disorder.' " J.M. then was moved to a secure psychiatric facility and the public guardian petitioned to be appointed his conservator under section 5008, subdivision (h)(1)(B).[2]

The trial court appointed the public guardian as temporary conservator pending an investigation and the petition's final adjudication. The trial court later granted the public guardian authority to administer anti-psychotic medications to J.M. without his consent, based on his psychiatrist's testimony that he had refused medication and his delusions prevented rational participation in treatment decisions. (The psychiatrist also testified that J.M. suffers from diabetes, requiring blood draws to monitor blood sugar if a different and potentially more effective anti-psychotic medication were to be prescribed.) Following its investigation, the public guardian recommended the trial court establish a conservatorship for J.M., appoint the public guardian to serve as conservator, and impose special restrictions on (among other things) J.M.'s right to enter into contracts and to refuse routine medical treatment.

At the hearing on the petition, after the trial court advised him of his trial rights, J.M. stated he did not wish to have a trial or present witnesses, but only to make a statement. He repeated his belief that he lived in Gilroy, that he was a millionaire who owned a successful pest-control business, and that he was "taking the heat" from "two guys" who were using his driver's license, "getting in trouble" and "destroy[ing] [his] life over his retirement package." He also repeated his plan to move back to Gilroy with his wife and twin daughters and put a guest house in the back of his property for his parents.

---

[2] Section 5008, subdivision (h)(1)(B), (also known as a "Murphy" conservatorship), requires that the conservatee "must be 'gravely disabled' by virtue of being subject to an information or indictment charging a serious violent felony, must be unable '[a]s a result of mental disorder' to meaningfully participate in his or her defense to the charge, and must also be found to be 'currently dangerous as the result of a mental disease, defect, or disorder.' " (*County of Los Angeles v. Superior Court* (2013) 222 Cal.App.4th 434, 444–445.)

3

The trial court found J.M. was a " 'gravely disabled' person," as defined by section 5008, subdivision (h)(1)(B), and appointed the public guardian as conservator for one year.  The court further imposed special disabilities on J.M., including the right to enter into contracts (excepting certain small transactions) and the right to refuse or consent to routine medical treatment unrelated to his grave disability.

## II.    DISCUSSION

### A.  THE APPEAL IS MOOT AND NO EXCEPTION APPLIES

"If relief granted by the trial court is temporal, and if the relief granted expires before an appeal can be heard, then an appeal by the adverse party is moot.  However, 'there are three discretionary exceptions to the rules regarding mootness: (1) when the case presents an issue of broad public interest that is likely to recur; (2) when there may be a recurrence of the controversy between the parties; and (3) when a material question remains for the court's determination.' " (*Environmental Charter High School v. Centinela Valley Union High School Dist.* (2004) 122 Cal.App.4th 139, 144.)

The public guardian contends this appeal should be dismissed as moot because the conservatorship terminated by operation of law in August 2024.  J.M. asks us to exercise our discretion to reach the merits of his appeal, asserting that the controversy in this case is likely to recur between himself (and others similarly situated) and the public guardian in future conservatorship petitions.  He also asserts that this case presents a recurring issue of broad public interest regarding the evidence and legal analysis necessary to impose special disabilities.

We conclude that the issues presented here are driven by the record developed in this individual case.  Any future conservatorship petition and possible dispute regarding the imposition of particular disabilities against J.M. will be a new matter governed by the facts and circumstances of his condition and the treatment recommended at that time. (See *MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 215 [declining to exercise discretion to resolve moot questions that

4

were essentially factual in nature and therefore required resolution on a case-by-case basis].)

We are also unpersuaded that this case presents an issue of broader public interest. Contrary to J.M.'s contention the trial court must make an individualized consideration and provide clear and convincing evidentiary support for each special disability, a finding of decisional incapacity with respect to the right to contract and to make routine medical treatment decisions need not be express so long as the record "disclose[s] that the trial court was aware of the finding it was required to make before imposing the disabilities, that it considered the evidence proffered on the issue, and that it in fact made the finding." (*K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 179 (*Meredith*); *Conservatorship of Amanda B*. (2007) 149 Cal.App.4th 342, 347 [applying substantial evidence standard to finding that conservatee was not capable of making routine medical decisions, based on conservatee's denials of existing medical condition and necessity of consistent treatment]; *Conservatorship of George H*. (2008) 169 Cal.App.4th 157, 166 [order suspending conservatee's right to contract supported by testimony that conservatee refused medication for mental illness that produced delusional beliefs and hallucinations].)

J.M. relies on *Meredith* to argue that this appeal presents an important issue of public interest that is capable of repetition but may evade review. Petitioners in *Meredith* challenged the public guardian's alleged practice of seeking and obtaining orders divesting disabled persons of their right to make decisions about their own medical treatment, which included the involuntary administration of anti-psychotic medication, without an appropriate judicial determination of personal decisional incapacity. (*Meredith*, *supra*, 204 Cal.App.4th at p. 168.) The reviewing court in *Meredith* rejected the public guardian's argument that the appeal was mooted by the voluntary revision of conservatorship pleading forms and the expiration of the petitioners' conservatorships. The court reasoned that the petitioners had chronic mental disorders that had already led

to repeated involuntary commitment and conservatorship proceedings in which they had challenged the ongoing practices and policies, suggesting it was reasonably likely that the alleged violations would continue to affect other proposed conservatees. (*Id*. at p. 175.) J.M.'s appeal—which challenges the sufficiency of the evidence specific to J.M.'s case—alleges no such customary practices or policies.

As we have noted, the challenged conservatorship order expired by operation of law in August 2024. Because neither an affirmance nor a reversal of that order would affect the substantive rights of the parties, this court cannot provide effective relief and the appeal must be dismissed as moot.

## III.    DISPOSITION

The appeal is dismissed as moot.

_____

Grover, Acting P. J.

**WE CONCUR:**

_____

Lie, J.

_____

Wilson, J.

H051497
*Warren, as Public Guardian of Santa Clara County v. J.M.*