[No. G0005285. Fourth Dist., Div. Three. Apr. 28, 1989.]

Conservatorship of the Person and Estate of GLENNROSE SYMINGTON.
PUBLIC GUARDIAN OF ORANGE COUNTY, Petitioner and Respondent, v.
GLENNROSE SYMINGTON, Conservatee and Appellant.

**COUNSEL**

Licker & Licker and Mark D. Licker for Conservatee and Appellant.

Adrian Kuyper, County Counsel, and Thomas F. Morse, Deputy County Counsel, for Petitioner and Respondent.

**OPINION**

**CROSBY, J.**—Glennrose Symington challenges an order granting the Orange County Public Guardian's petition for appointment as her conservator pursuant to Welfare and Institutions Code section 5352. We affirm.

## I

Octogenarian Symington was living alone in her Anaheim mobilehome in late 1986 when she came to the attention of the Mental Health Services for the County of Orange. A "mental health geriatric specialist" reviewed Symington's living conditions and discovered her mobilehome needed repair and she was unkempt and not providing herself with proper nutrition or hygiene.

The Orange County Public Guardian petitioned the superior court for appointment as conservator, describing Symington as "gravely disabled" within the meaning of Welfare and Institutions Code section 5008, subdivi-

sion (h). (Welf. & Inst. Code, § 5350 et seq.) The court appointed the public guardian as temporary conservator and scheduled a hearing date. Counsel was assigned for Symington. Through her attorney, she waived a jury trial on the issue of her grave disability. (Welf. & Inst. Code, § 5350, subd. (d).)

By the time of the conservatorship hearing, Symington had been moved to a residential facility. Dr. Dennis Houton evaluated Symington's mental status in an interview on February 4, 1987. He testified at the hearing that she suffered from senile dementia and was gravely disabled. She exhibited severe intellectual and memory impairment, could not remember recent events and apparently believed she was living in Pennsylvania some 20 years in the past. In Houton's opinion, Symington did not have the ability to take prescribed medication on her own and probably would not take it outside the facility. He noted she had already wandered away from the grounds and suffered an accident, demonstrating an inability to appreciate her need for support and assistance. When the deputy county counsel asked, "Based upon your experience with her, do you feel that she is able to cooperate with treatment?", Dr. Houton replied, "I believe she is unable to make a meaningful judgment in that regard or be able to give conformed [*sic* ] consent to treatment or placement at this time."

The parties stipulated to the admission of a January 1987 report prepared by David Pierce, Ph.D. Dr. Pierce noted Symington neglected her health, had lost weight, and could not manage routine finances and mobilehome maintenance. He diagnosed primary cognitive dementia, for which there is no known cure, and concluded Symington could not provide for herself without assistance. In what can only be described as a non sequitur, the report concluded that because Symington could not take care of herself and qualified for a conservatorship under the Probate Code (see Prob. Code, § 1800 et seq.), "it would appear to be moot whether or not she also meets the criterion for [Welfare and Institutions Code] Section 5008(h)(1)."

Symington's attorney offered no evidence to contradict that produced by the deputy county counsel. The court determined Symington was gravely disabled beyond a reasonable doubt. The judge added, in a colloquy with Symington's counsel, that it was not necessary to determine additionally whether the conservatee was unwilling or unable to accept treatment on her own, although that was the undisputed evidence. She did conclude, however, "I would therefore make all of the necessary LPS findings that might be required in addition to what I've stated." The public guardian's petition for a conservatorship was granted.[1]

---

[1] A conservatorship under the Welfare and Institutions Code, as opposed to one under the Probate Code, automatically expires after one year. (Welf. & Inst. Code, § 5361.) It may be

## II

While conceding his client's inability to care for her own needs, Symington's counsel argues she is undeserving of the stigma of an LPS Act conservatorship and urges a remand for creation of a conservatorship under the Probate Code (§ 1800 et seq.). ▮ In particular, he contends reversal is required because the court did not make a finding that Symington was unwilling or unable to voluntarily accept treatment for her mental illness. He claims, "Grave disability, *by definition,* includes an unwillingness and/or inability on the part of the proposed conservatee to voluntarily accept treatment for the mental disorder making the conservatee unable to provide for the necessities of life." County counsel agrees the court erred, but argues the miscue was harmless. For the reasons following, we disagree with both counsel and find the judge was correct.[2]

As explained in greater detail below, we doubt a finding that the proposed conservatee is unable or unwilling to accept treatment is necessary under the statutory scheme. This language is found only in Welfare and Institutions Code section 5352, a section apparently designed to allow treatment facilities to initiate conservatorship proceedings at the time a patient is accepted where the individual may prove uncooperative. It appears to have been enacted for that limited purpose, not as an additional element to be proved to establish the conservatorship itself. Indeed, many gravely disabled individuals are simply beyond treatment. Under the interpretation of the statutory scheme urged upon us, they presumably could not be the subject of an LPS Act conservatorship at all. We seriously doubt any such intent on the Legislature's part.

Welfare and Institutions Code section 5350 authorizes the court to appoint a conservator "for any person who is gravely disabled as a result of mental disorder . . . ." A petition for this form of conservatorship may be initiated when a "professional person . . . determines that a person in his care is gravely disabled as a result of mental disorder . . . *and* is unwilling to accept, or incapable of accepting, treatment voluntarily . . . ." (Welf. &

extended for another one-year term only if two physicians or licensed psychologists are of the opinion the conservatee is still gravely disabled.

At the expiration of the initial term, while this appeal was pending, Symington's counsel voluntarily consented to continue the conservatorship for another year. In light of this development, we asked appellate counsel whether it was still necessary to proceed with the appeal. Though conceding his client's current incompetence, he emphasized his desire to obtain appellate review on the issue of the trial court's compliance with the requisites of the Lanterman-Petris-Short Act (LPS Act).

[2] In light of counsel's stipulation to extend the LPS Act conservatorship, his claim that this type of conservatorship, as opposed to one pursuant to the Probate Code, unfairly stigmatizes his client has little appeal.

Inst. Code, § 5352, italics added.) Once this recommendation is made, "the proposed conservatee is entitled to a jury trial on the issue of whether he is gravely disabled. (§ 5350, subd. (d).) ■ A conservatorship may be established only if the jury finds such grave disability unanimously and beyond a reasonable doubt. [Citation.]" (*Conservatorship of Early* (1983) 35 Cal.3d 244, 248 [197 Cal.Rptr. 539, 673 P.2d 209].)

The pertinent statutory definition of "grave disability" is found in Welfare and Institutions Code section 5008, subdivision (h)(1): "A condition in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs for food, clothing, or shelter . . . ." ■ The statutory definition does not refer to the conservatee's refusal or inability to consent to mental health treatment. Although the term "gravely disabled" appears in a myriad of sections, as noted above, the language referring to a conservatee's unwillingness or inability to voluntarily accept treatment is contained only in Welfare and Institutions section 5352. And there appears to be a logical explanation for it: The phrase is not intended to be a legal term, but is a standard by which mental health professionals determine whether a conservatorship is necessary in order that a gravely disabled individual may receive appropriate treatment. A person who, as a result of a mental disorder, is unable to care for her food, clothing, and shelter needs is more likely than not unable to appreciate the need for mental health treatment. If a mental health professional determines this to be so, the person may appropriately be recommended for a conservatorship. Put another way, mental health facilities may initiate conservatorship proceedings before they accept a gravely disabled patient. But the terms are simply not interchangeable, and an individual who will not voluntarily accept mental health treatment is not for that reason alone gravely disabled.

In *Conservatorship of Walker* (1987) 196 Cal.App.3d 1082 [242 Cal.Rptr. 289], the court determined the jury was erroneously instructed that "a conservatorship may be established merely because one refuses treatment even if that person otherwise can meet his or her basic needs. Such a result is contrary to the LPS Act's mandate that a person is gravely disabled, so as to justify the serious deprivation of their liberty rights arising from a conservatorship, *only if* they cannot provide for their basic personal needs for food, clothing, or shelter. [Citations.] The LPS Act conspicuously does *not* state that persons are gravely disabled solely because they refuse treatment for a mental illness. [Citations.]" (*Id.*, at p. 1093.) Nevertheless, the court found the instructional error harmless because "as a matter of law no jury could find [the proposed conservatee], on his own or with family help, capable of meeting his basic needs for food, clothing or shelter." (*Id.*, at p. 1094.)

Our research has failed to reveal any authority for the proposition urged by Symington, i.e., without a finding that the proposed conservatee is unable or unwilling to voluntarily accept treatment, the court must reject a conservatorship in the face of grave disability. In *Conservatorship of Early, supra,* 35 Cal.3d 244, the court specifically refused to reach the question:[3] "Appellant contends the trial court erred in refusing his instruction that he was not gravely disabled if he voluntarily accepted treatment. [ ] [The instruction requested, however, had] no basis in [ ] the record. Appellant consistently *refused* treatment for his mental disorder. That he allowed hospital staff to bathe him and treat his wounds does not mean he voluntarily accepted treatment in the sense intended. (§ 5352.) [ ] [Accordingly, we have no occasion to decide the legal issue asserted.]" (*Id.,* at pp. 255–256.) The court was undoubtedly correct. Some persons with grave disabilities are beyond treatment. Taken to its logical conclusion, they would be beyond the LPS Act's reach, according to the argument presented in this appeal.

We have discovered only one case in which the question of the proposed conservatee's ability to accept mental health treatment was submitted to the jury. Instructions in *Conservatorship of Davis* (1981) 124 Cal.App.3d 313 [177 Cal.Rptr. 369] advised that " 'before you may consider whether [the proposed conservatee] is gravely disabled you must first find that she is, as a result of a mental disorder, unwilling or unable to accept treatment for that mental disorder on a voluntary basis. If you find that [the proposed conservatee] is capable of understanding her need for treatment for any mental disorder she may have and capable of making a meaningful commitment to a plan of treatment of that disorder she is entitled to a verdict of "not gravely disabled." ' " (*Id.,* at p. 319.) The jury determined the proposed conservatee, who had expressed a willingness to take antipsychotic medication at home and whose husband was willing to care for her there, was not gravely disabled. The appellate court agreed; but the issue resolved in that case did not call for an analysis of the propriety of the instruction. And none was offered.

Our facts are considerably different. As the conservatee's unsworn, on-the-record interjections demonstrated, she denied needing any assistance whatsoever and asserted she was capable of caring for herself. All the mental health professionals whose opinions were offered in evidence disagreed with her. Based on the record and the court's determination that Symington was indeed gravely disabled, we find no error.

---

[3] In *Early,* the court adopted the Court of Appeal opinion authored by Justice Carr. Brackets in the original Supreme Court opinion denote where material was either deleted or added by the court.

Judgment affirmed.

Scoville, P. J., and Moore, J., concurred.