169 Cal.App.4th 157 (2008)
Conservatorship of the Person and Estate of GEORGE H.;
MARVIN SOUTHARD, Petitioner and Respondent,
v.
GEORGE H., Objector and Appellant.
No. B204411.
Court of Appeals of California, Second District, Division Five.
December 16, 2008.
*159 Jean Matulis, under appointment by the Court of Appeal, for Objector and Appellant.
Oldman, Cooley, Sallus, Gold, Birnberg & Coleman, Marc L. Sallus and Justin B. Gold for Petitioner and Respondent.

OPINION
ARMSTRONG, J.
George H. appeals from an order appointing a conservator of his person and estate under the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.). We affirm.

Background
The Lanterman-Petris-Short Act (LPS or the Act), Welfare and Institutions Code[1] section 5000 et seq., governs involuntary treatment of the mentally ill in California. Under the Act, "A conservator of the person, of the estate, or of the person and the estate may be appointed for any person who is gravely *160 disabled as a result of mental disorder . . . ." (§ 5350.) "Gravely disabled" is defined. It means, "A condition in which a person, as a result of a mental disorder, is unable to provide for his or her basic personal needs for food, clothing, or shelter . . ." (§ 5008, subd. (h)) with the additional proviso that "a person is not `gravely disabled' if that person can survive safely without involuntary detention with the help of responsible family, friends, or others who are both willing and able to help provide for the person's basic personal needs for food, clothing, or shelter" (§ 5350, subd. (e)(1)).
This conservatorship was established after La Casa Mental Health Rehabilitation Center recommended conservatorship to the county's public guardian, pursuant to the procedures set out in the Act. (§ 5352.) After conducting an investigation of "all relevant aspects of the person's medical, psychological, financial, family, vocational and social condition[s]" and "all available alternatives to conservatorship," the public guardian concurred with the recommendation, and on September 9, 2007, petitioned the superior court for appointment of conservator of appellant's person and estate. (§§ 5354, 5352.) Appellant received the appropriate notices, and counsel was appointed for him. (§ 5365.) A hearing was set for September 26, 2007.
At the hearing, the public guardian submitted its report on its investigation. The report stated, inter alia, that appellant had a diagnosis of schizophrenia and a history of psychiatric hospitalizations and mental illness exacerbated by noncompliance with medication. In August, he had been placed on a section 5150 hold, initiated by his mother and staff of Los Angeles County Hospital+USC Medical Center. He displayed hostile, psychotic behavior, and paranoid, persecutory, delusional and disorganized thought processes. Since that time, he had remained gravely disabled. The public guardian recommended that certain disabilities be imposed on appellant: the privilege of a driver's license, the right to refuse treatment for his disability, and the right to contract.
The Act provides that "[t]he person for whom conservatorship is sought shall have the right to demand a court or jury trial on the issue whether he or she is gravely disabled" (§ 5350, subd. (d)), and at the hearing, appellant requested a jury trial.
Trial did not take place until October 10. Pending trial, the court appointed the public guardian conservator of appellant's person and estate, and made the orders concerning disabilities which the public guardian had recommended.
At trial, the public guardian called a forensic psychologist, Dr. Gary Freedman-Harvey, and appellant's mother. Appellant testified in his own behalf.
*161 Dr. Freedman-Harvey testified consistent with the public guardian's report: appellant suffered from schizophrenia and was subject to delusional beliefs and auditory hallucinations. In his opinion, there were no alternatives to conservatorship. Appellant's mother testified that appellant had once lived with her, but had not done so for the past two and a half years. He was sick, and was in and out of the hospital. He had a long history of refusing medication. She did not believe he was ready to live with her again.
Appellant testified that he did not want a conservatorship, but wanted to live in a board and care, or with his mother. He also testified that he thought his medication helped him by calming him down.
The jury was instructed that "the term `gravely disabled' means a condition in which a person, as a result of mental disorder, is unable to provide at the present time for his basic personal needs for either food, clothing or shelter in the general context of his life. The ability to provide for these basic needs requires more than the physical or mechanical ability to do certain acts. It means that the person is able to function and sustain himself in the community with or without the assistance of other available resources. However, he need not necessarily be financially capable of self-support. He need only be aware of the social services and resources available to him, and be capable of applying any income he receives, regardless of its source, to provide for his basic personal needs. [¶] If you find that as a result of a mental disorder [appellant] does not at this time have ability to function in this manner, you must find he is gravely disabled."
The jury was also instructed that if it found that appellant was "capable of surviving in freedom by himself or with the help of willing and responsible family members or friends or with the assistance of available community resources you shall find that he is not gravely disabled."
The jury unanimously found that appellant was gravely disabled.

Discussion[2]

1. The jury instructions

Appellant's first argument is that the court had a sua sponte duty to instruct the jury that if he was able to accept voluntary treatment, there was no need *162 for a conservatorship. He relies on Conservatorship of Walker (1987) 196 Cal.App.3d 1082 [242 Cal.Rptr. 289], which held that "The LPS Act permits a conservatorship to be recommended when a professional person determines an individual is both (1) gravely disabled and (2) unwilling or incapable of voluntarily accepting treatment. (§ 5352.) One is gravely disabled when unable to provide for basic personal needs of food, clothing, or shelter. (§ 5008, subd. (h).) It follows that if persons provide for their basic personal needs (i.e. are not gravely disabled) or are able to voluntarily accept treatment, there is no need for a conservatorship." (Id. at p. 1092, fns. omitted.)[3]Walker found that the jury instruction given in that case was erroneous. Then, in response to the conservator's argument that Walker's failure to object waived the argument, the court held that "A proposed conservatee is entitled to procedural due process protections similar to a criminal defendant since fundamental liberty rights are at stake. (See Conservatorship of Roulet (1979) 23 Cal.3d 219, 223-235 [152 Cal.Rptr. 425, 590 P.2d 1].) The trial court had a sua sponte duty to correctly instruct on the general principles of law necessary for the jury's understanding of the case. (People v. Sedeno (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913].)" (Conservatorship of Walker, at p. 1092, fn. 5.)
(1) A trial court's duty with regard to jury instructions is of course quite different in criminal cases than it is in civil cases. In criminal cases, the court must instruct on the general principles of law relevant to the issues raised by the evidence, even in the absence of a request. (People v. Breverman (1998) 19 Cal.4th 142, 154 [77 Cal.Rptr.2d 870, 960 P.2d 1094].) In a civil case, the parties must propose complete and comprehensive instructions in accord with their theories. If they do not, the court has no duty to instruct on its own motion. (Metcalf v. County of San Joaquin (2008) 42 Cal.4th 1121, 1130-1131 [72 Cal.Rptr.3d 382, 176 P.3d 654].) Walker thus held that the criminal law rule applies to LPS conservatorships. We think the law is to the contrary. (2) An LPS conservatee has due process rights under the Act and the California Constitution. (See Conservatorship of Bones (1987) 189 Cal.App.3d 1010, 1017 [234 Cal.Rptr. 724]; Conservatorship of Warrack (1992) 11 Cal.App.4th 641 [14 Cal.Rptr.2d 99]; Conservatorship of Christopher A. (2006) 139 Cal.App.4th 604, 612 [43 Cal.Rptr.3d 427].) However, the proceedings are civil, not criminal, and the civil trial procedural rules are the ones which apply.
*163 We begin our analysis with Roulet, on which Walker relied. "In Roulet, [the Supreme Court] held that `[t]he due process clause of the California Constitution requires that proof beyond a reasonable doubt and a unanimous jury verdict be applied to conservatorship proceedings under the LPS Act.' (Roulet, at p. 235.) The rationale for the decision was that `[t]he appointment of a conservator for appellant and her subsequent confinement in a mental hospital against her will deprived appellant of freedom in its most basic aspects and placed a lasting stigma on her reputation.' (Id. at p. 223.) The court rejected the respondent's `reliance on a civil label.' (Id. at p. 225.) `[R]espondent takes false comfort in the fact that appellant's commitment is only a "civil" confinement for remedial purposes. However, these are mere labels. Appellant's stay in Camarillo State Hospital was not any less involuntary because the state called her incarceration by one name rather than another. As the United States Supreme Court has authoritatively written, "commitment is a deprivation of liberty. It is incarceration against one's will, whether it is called `criminal' or `civil.'" (In re Gault (1967) 387 U.S. 1, 50 [18 L.Ed.2d 527, 87 S.Ct. 1428].)'" (Conservatorship of Ben C. (2007) 40 Cal.4th 529, 537-538 [53 Cal.Rptr.3d 856, 150 P.3d 738].)
Walker clearly understood Roulet to mean that LPS conservatorships are sufficiently like criminal proceedings that criminal law procedural protections automatically apply. However, the Supreme Court has since explained that Roulet did not create any such rule. Instead, that court has found that "the analogy between criminal proceedings and proceedings under the LPS Act is imperfect at best and that not all of the safeguards required in the former are appropriate to the latter." (Conservatorship of Ben C., supra, 40 Cal.4th at p. 538.) In fact, since Roulet, the Supreme Court and Courts of Appeal which have considered the application of various criminal-law due process protections to LPS conservatorships have consistently found that the criminal law rules do not apply.
Most recently, in Conservatorship of Ben C., supra, 40 Cal.4th 529, the Supreme Court determined that no Anders/Wende (Anders v. California (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396]; People v. Wende (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071]) review was required on appeals of LPS conservatorships. The court held "the Anders/Wende procedures are not required in appeals from LPS conservatorship proceedings. The conservatee is not a criminal defendant and the proceedings are civil in nature." (Conservatorship of Ben C., supra, 40 Cal.4th at p. 537, italics added.)
Ben C. drew on Conservatorship of Susan T., supra, 8 Cal.4th 1005, in which the Supreme Court held that the exclusionary rule does not apply to LPS conservatorships. Importantly, the court analyzed the issue in the context *164 of civil proceedings, finding "no similarity between the aims and objectives of the [LPS] act and those of the criminal law." (Conservatorship of Susan T., 8 Cal.4th at p. 1015.) The court held: "What we have said of commitment proceedings for the mentally retarded (§§ 6500-6513) is equally true of conservatorship proceedings under the act: `The commitment is not initiated in response, or necessarily related, to any criminal acts; it is of limited duration, expiring at the end of one year and any new petition is subject to the same procedures as an original commitment [citation]; the petitioner need not be a public prosecutor . . . . The sole state interest, legislatively expressed, is the custodial care, diagnosis, treatment, and protection of persons who are unable to take care of themselves and who for their own well being and the safety of others cannot be left adrift in the community. The commitment may not reasonably be deemed punishment either in its design or purpose. It is not analogous to criminal proceedings.' (Cramer v. Tyars (1979) 23 Cal.3d 131, 137 [151 Cal.Rptr. 653, 588 P.2d 793]; see also Conservatorship of Baber (1984) 153 Cal.App.3d 542 [200 Cal.Rptr. 262], [`[a] conservatorship proceeding is not a prosecution for a particular act, but an attempt to determine a condition which is subject to change'].)" (Conservatorship of Susan T., supra, at p. 1015.)
The cases from the Courts of Appeal are numerous, and find that conservatorship proceedings are not criminal proceedings, and that the procedural rules used in civil trials apply. (See Baber v. Superior Court (1980) 113 Cal.App.3d 955, 959 [170 Cal.Rptr. 353] [no right to a jury trial on rehearing under § 5364]; Conservatorship of Mitchell (1981) 114 Cal.App.3d 606, 612 [170 Cal.Rptr. 759] [no absolute right to warning of privilege against self-incrimination prior to psychiatric examination]; Conservatorship of Maldonado (1985) 173 Cal.App.3d 144 [218 Cal.Rptr. 796] [no constitutional right to jury trial]; Conservatorship of Bones, supra, 189 Cal.App.3d at pp. 1015-1016 [5th Amend. ban on self-incrimination does not apply]; Conservatorship of Isaac O. (1987) 190 Cal.App.3d 50 [235 Cal.Rptr. 133]; Conservatorship of Mary K. (1991) 234 Cal.App.3d 265 [285 Cal.Rptr. 618] [personal waiver of jury trial not required; counsel may validly waive the conservatee's right]; Conservatorship of Gordon (1989) 209 Cal.App.3d 364, 368 [257 Cal.Rptr. 365] [civil rules on peremptory challenges apply]; Conservatorship of McKeown (1994) 25 Cal.App.4th 502 [30 Cal.Rptr.2d 542] [instruction under CALJIC No. 2.80 rather than BAJI No. 2.40 was proper]; Conservatorship of Joel E. (2005) 132 Cal.App.4th 429 [33 Cal.Rptr.3d 704] [no 6th Amend. right to self-representation]; Conservatorship of David L. (2008) 164 Cal.App.4th 701, 711 [79 Cal.Rptr.3d 530] [no constitutional right to counsel].)
(3) Consistent with these holdings, we find that, given that LPS conservatorship proceedings are not criminal proceedings, the sua sponte duty to *165 instruct which applies to jury trials in criminal cases does not apply to jury trials under section 5350. We thus find no trial court error.

2. Powers and Disabilities

The trial court granted the conservator numerous powers, including the power to require appellant to be treated with psychotropic medication, and imposed numerous disabilities on appellant, including the right to enter into contracts and the privilege to operate a motor vehicle.
Appellant argues these orders are invalid and violate due process, and must be reversed. He cites the rules that "mere status of conservatee does not, ipso facto, establish incompetence" (Baber v. Napa State Hospital (1984) 154 Cal.App.3d 514, 519 [201 Cal.Rptr. 432]), that the imposition of a conservatorship without a finding of incompetency does not deprive the conservatee of the capacity to contract (Board of Regents v. Davis (1975) 14 Cal.3d 33, 38-39 [120 Cal.Rptr. 407, 533 P.2d 1047]) and that an LPS conservatee retains the right to refuse medical treatment unless the court, after making appropriate findings, specifically denies that right (Riese v. St. Mary's Hospital & Medical Center (1987) 209 Cal.App.3d 1303 [271 Cal.Rptr. 199]; § 5358, subd. (b) [conservator shall also have the right, if specified in the court order, to require his or her conservatee to receive treatment related specifically to remedying or preventing the recurrence of the conservatee's being gravely disabled]). Appellant argues that the same rule applies to the driving privilege.
(4) It is certainly true that "If a person is found gravely disabled and a conservatorship is established, the conservatee does not forfeit legal rights or suffer legal disabilities merely by virtue of the disability. (§ 5005; Conservatorship of Walker (1989) 206 Cal.App.3d 1572, 1578 [254 Cal.Rptr. 552].) The court must separately determine the duties and powers of the conservator, the disabilities imposed on the conservatee, and the level of placement appropriate for the conservatee. (§§ 5357, 5358.) The party seeking conservatorship has the burden of producing evidence to support the disabilities sought, the placement, and the powers of the conservator, and the conservatee may produce evidence in rebuttal." (Conservatorship of Christopher A., supra, 139 Cal.App.4th at p. 612.)
However, we see no grounds for reversal. The trial court here properly specified each of the powers and disabilities it imposed. Appellant impliedly argues that a specific, on-the-record statement of the reasons for each order is required. We see no such legal requirement. Instead, we follow the usual rules on appeal (Conservatorship of Isaac O., supra, 190 Cal.App.3d at p. 57) and "presume in favor of the judgment every finding of fact necessary to support it warranted by the evidence" (Homestead Supplies, Inc. v. Executive Life Ins. Co. (1978) 81 Cal.App.3d 978, 984 [147 Cal.Rptr. 22]).
*166 The evidence warranted the trial court findings. The public guardian presented ample evidence that appellant suffered from a mental illness, making medication necessary, and the public guardian's report, Dr. Freedman-Harvey's testimony, and appellant's mother's testimony was that appellant often refused to take his medication. This evidence, and the evidence that appellant suffered delusional beliefs and auditory hallucinations, supported the order suspending appellant's driving privilege and right to contract.

Disposition
The judgment is affirmed.
Turner, P. J., and Kriegler, J., concurred.
NOTES
[1] All further statutory references are to that code.
[2] An LPS conservatorship automatically expires after one year (§ 5361), and this order has expired. The public guardian argues that the case is moot, an argument which seems to be uniformly raised, and uniformly rejected, in appeals from LPS conservatorships. We agree with the many cases which hold that the appeal should be heard because it raises issues which are capable of recurring, yet evading review because of mootness. (Conservatorship of Susan T. (1994) 8 Cal.4th 1005, 1011, fn. 5 [36 Cal.Rptr.2d 40, 884 P.2d 988].)
[3] This holding has been criticized. Conservatorship of Symington (1989) 209 Cal.App.3d 1464 [257 Cal.Rptr. 860] noted that the statutory definition of "gravely disabled" does not include a requirement of unwillingness or inability to voluntarily accept treatment. That phrase is found in section 5352, which concerns a care facility's recommendation for a conservatorship. Symington wrote: "The phrase is not intended to be a legal term, but is a standard by which mental health professionals determine whether a conservatorship is necessary in order that a gravely disabled individual may receive appropriate treatment." (209 Cal.App.3d at p. 1468.)