Filed 8/29/13  Conservatorship of Clara P. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| Conservatorship of the Estate and Person of CLARA P. | |
| MANUEL JIMENEZ, as Public Conservator, etc., | F065812 |
| Petitioner and Respondent, | (Super. Ct. No. P26560) |
| v. | **OPINION** |
| CLARA P., | |
| Objector and Appellant. | |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County.  Brian L. McCabe, Judge.

Rachel Lederman, under appointment by the Court of Appeal, for Objector and Appellant.

James N. Fincher, County Counsel, David A. Olsen, Deputy County Counsel, for Petitioner and Respondent.

-ooOoo-

---

[*]     Before Gomes, Acting P.J., Kane, J. and Detjen, J.

Appellant, Clara P., challenges an order reappointing respondent Merced County Public Conservator (Public Conservator) as conservator of her person and estate under the Lanterman-Petris-Short Act (LPS). (Welf. & Inst. Code, § 5000 et seq.)[1] Appellant contends (1) insufficient evidence supports the finding that she suffers from the sort of "grave disability" required for an LPS conservatorship (§ 5350); and (2) the trial court erred in restricting her from possessing firearms, holding a driver's license, entering into contracts, entering into transactions over $50, and refusing or consenting to medical treatment.

We affirm the order reappointing the Public Conservator and imposing the special disabilities set forth above.

## FACTUAL BACKGROUND

*Physician Declarations*

Evidence submitted included two form declarations executed by Isabel Manuel, M.D. and Edward Benton, M.D. In her declaration, Dr. Manuel stated she had "determined that [appellant] is gravely disabled within the meaning of [section] 5008 (h), as a result of a mental disorder." She gave as the reasons for this determination the following: "[Appellant] is delusional. Paranoid. Believes she still has an apartment. Has no viable plan for self-care."

In his declaration, Dr. Benton stated he had made the same determination and gave the following reasons: "Due to residual symptoms of schizophrenia she is unable to formulate a viable plan to provide for her basic needs."

In their declarations, each physician, for the same reasons given to support the opinion that appellant was gravely disabled, also opined that appellant should be prohibited from possessing a firearm, is not able to give informed consent to both

---

[1] All statutory references are to the Welfare and Institutions Code.

psychiatric and non-psychiatric medical treatment, is not competent to enter into a contract, and should not be permitted to operate a motor vehicle.

***Testimony of Dr. Manuel[2]***

Appellant has been under conservatorship "for several years." She lived "in her own residence several years ago," but for the last two years "she has been in a placement[.]" Her current placement is a board and care home. She is "not happy" with her current placement because she is under the delusion "that the board and care is running a prostitution ring."

Appellant "is diagnosed with schizophrenia ...." Dr. Manuel, who is a psychiatrist, opined that appellant "at this time ... remain[s] gravely disabled." Dr. Manuel gave as the basis for this opinion the following: "[Appellant] remains delusional. She has no adequate plan for self-care." "She continues" to be under the "fixed delusion" that "she [has] an apartment that currently is being paid for by her attorneys and is located ... somewhere on Loughborough." Appellant "would rather go there at this time."

Dr. Manuel was "[h]opeful[]" that "we can step [appellant] down to a room and board and then eventually get her to her own apartment," but appellant was "opposed" to that plan because she is under the delusion that she already has her own apartment. Appellant's medications "won't have any affect" on this delusion.

Dr. Manuel further opined: Appellant would not be "a danger to herself or others at this time." It was "possible" that at some point she could live "on her own" again. However, at present she would not be able to "function adequately" "on her own." Dr. Manuel based this latter opinion, in part, on appellant's belief that she has an apartment that her attorneys are paying for.

---

**2**     Information in this section is taken from Dr. Manuel's testimony at the reappointment hearing. The parties stipulated to her "expertise for the purposes of this hearing[.]"

Appellant is "currently on a long-acting intramuscular injection" of Haldol Decanoate (Haldol). She receives these injections once per month. This medication regimen, which appellant has been on for two years, "stabilized" her and is currently "keeping her adequately stabilized." The program of Haldol injections was instituted "in part, because of her non-compliance with the medications." She "had to [be] switch[ed] to Haldol ... to ensure that the medication [was] in her system."

When asked why appellant "has been compliant with the Haldol injections," Dr. Manuel responded, "Because we bring her to her appointments. We make sure that she gets to her appointments."

There had not been any "problem administering the Haldol to [appellant]." Dr. Manuel "[had not] heard [of] any resistance on [appellant's] part to come to her appointments." Appellant had not "expressed ... that she will stop [her Haldol regimen] if she were to go and live on her own somewhere." Appellant has "been taking medications" for "maybe a decade or more."

### Appellant's Testimony

Appellant testified to the following: She does not have "problems with the facilities they put [her] in in the beginning, but ... after the beginning is over ... things start happening." She "discovered a prostitution ring" at her current placement, "And now all they are trying to do is ... get rid of me." "[T]hey use their cell phones to mark my clothes .... They ... are just trying to chase me out of there for some reason." The night prior to the hearing "for no reason at all," in her room, "they did surgery through [the] brainwave on my back. So I don't know what their next move is."

## DISCUSSION

### Sufficiency of the Evidence-Gravely Disabled

Appellant argues that the evidence adduced at trial was insufficient to prove that she requires a conservatorship. We disagree.

4

Legal Background – "Gravely Disabled"

Section 5350 provides for the establishment of a conservatorship of the person and estate of "any person who is gravely disabled as a result of mental disorder or impairment by chronic alcoholism." Section 5361 allows a conservator to petition the superior court at the end of a one-year LPS conservatorship for the reestablishment of the conservatorship where two physicians or licensed psychologists agree the conservatee remains gravely disabled. The conservatee is then entitled to a court or jury trial to determine whether he or she is gravely disabled. (§ 5350, subd. (d).) To establish or renew a conservatorship, grave disability must be proven beyond a reasonable doubt. (*Conservatorship of Pollock* (1989) 208 Cal.App.3d 1406, 1411.)

As pertinent to this case, subdivision (h)(1)(A) of section 5008 defines the term "gravely disabled" to mean "[a] condition in which a person, as a result of a mental disorder, is unable to provide for his or her basic personal needs for food, clothing, or shelter." Thus, "in order to establish that a person is 'gravely disabled,' the evidence adduced must support an objective finding that the person, due to mental disorder, is incapacitated or rendered unable to carry out the transactions necessary for survival or otherwise provide for her basic needs of food, clothing, or shelter." (*Conservatorship of Smith* (1986) 187 Cal.App.3d 903, 909.) "Bizarre or eccentric behavior, even if it interferes with a person's normal intercourse with society, does not rise to a level warranting conservatorship except where such behavior renders the individual helpless to fend for herself or destroys her ability to meet those basic needs for survival. Only then does the interest of the state override her individual liberty interests." (*Ibid.*)

*Legal Background – Standard of Review*

"In reviewing a conservatorship, we apply the substantial evidence standard to determine whether the record supports a finding of grave disability." (*Conservatorship of Carol K.* (2010) 188 Cal.App.4th 123, 134 (*Carol K.*).) In applying this standard, we adhere to the following principles:

5

"We review the record as a whole in the light most favorable to the trial court judgment to determine whether it discloses substantial evidence. Substantial evidence ... is evidence that is reasonable, credible, and of solid value ...." (*Carol K.*, *supra*, 188 Cal.App.4th at p. 134.) "Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom." (*Conservatorship of Walker* (1989) 206 Cal.App.3d 1572, 1577 (*Walker*).)

"The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) "'"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. [Citation.]"'" (*Id.* at p. 1054.)

We resolve neither credibility issues nor evidentiary conflicts. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "Reversal on this ground [i.e., insufficiency of the evidence] is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the challenged order].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) "Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the finding." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052.)

<u>Analysis</u>

Evidence adduced at the reappointment hearing included the following: Appellant has been diagnosed with schizophrenia. She wants to leave her current placement in a board and care home because she is under the delusion that the home is running a prostitution ring. She is opposed to a gradual "step down" plan that would keep her in a restricted placement for the present but would work toward the goal of allowing her to live on her own in an apartment at some point in the future. Her plan for providing for

6

her own housing is to move, at this time, to an apartment that her attorneys are paying for. The existence of this apartment, however, is a delusion.

From this evidence, the court reasonably could have inferred appellant suffers from a mental disorder, as a result of which she had rejected reasonable plans for housing herself in favor of the obviously unfeasible plan, which she wants to put into operation at this time, of moving into a non-existent apartment. Under the principles of judicial review summarized above, the evidence and inferences reasonably drawn from it support the conclusion that appellant, due to a mental disorder, is unable to provide for her basic shelter needs and is therefore gravely disabled.

In addition, evidence of the following was adduced at the hearing: Appellant is currently receiving monthly injections of Haldol. She was prescribed this long-acting medication in part because she was not complying with the medication regimen in effect previously. The Haldol injections stabilized her, and it is this medication that is currently keeping her "adequately stabilized." When asked why appellant has been able to comply with the Haldol regimen, Dr. Manuel testified that "we"—presumably her conservator and/or Merced County mental health personnel—have made sure appellant gets to her appointments by transporting her there.

From this evidence the court reasonably could conclude that appellant stopped taking her medication in the past; compliance with the current regimen of monthly Haldol injections is keeping her condition stabilized; she has remained in compliance because her conservator and/or others make sure she gets to her appointments; and without this help she would not comply with the Haldol regimen.

These inferences, in turn, support the conclusion that appellant needed Haldol to remain "stabilized," i.e., in a condition in which she is able to provide for her basic needs, and that without supervision she would not receive this critical medication. This circumstance provides further support for the conclusion that at the time of the hearing, appellant, because of a mental disorder, was unable to provide for her basic needs and

7

was therefore gravely disabled. (See *Conservatorship of Guerrero* (1999) 69 Cal.App.4th 442, 447 ["but for the medication, which [the conservatee] would not take without supervision, [the conservatee] was presently gravely disabled"].)

Appellant argues there was no "specific evidence" that she "has been uncooperative with medication or is unwilling to continue taking medication." We disagree. As indicated earlier, Dr. Manuel testified that appellant had been "non-complian[t] with the medications," and it was for this reason, in part, that the Haldol regimen was instituted. Appellant also argues, "Nor is there any evidence that appellant would not cooperate with services to help her obtain independent housing, even if she has a bizarre belief that she already has an apartment." This circumstance, at most, creates a conflict which, under the principles of appellate review summarized above, we resolve in favor of the judgment. When we consider the record as a whole, as we are required to do, we conclude substantial evidence supports the court's finding that appellant was gravely disabled.

### *Sufficiency of the Evidence-Special Disabilities*

Appellant challenges the sufficiency of the evidence supporting the trial court's imposition of special disabilities on her driving privilege, her right to enter into contracts and transactions over $50, her right to possess firearms, and her right to consent or refuse to consent to medical treatment.

Section 5357 provides that the court may impose certain special disabilities on a conservatee, including those imposed by the court in the present case. (§ 5357, subds. (a), (b), (d)-(f).) That appellant is gravely disabled does not by itself satisfy the evidentiary requirements for the imposition of special disabilities under section 5357. (*Walker, supra,* 206 Cal.App.3d 1572 at p. 1578; *Conservatorship of George H.* (2008) 169 Cal.App.4th 157, 165 (*George H.*).) "A conservatee does not forfeit any legal right nor suffer legal disability by reason of the LPS commitment alone." (*Walker*, at p. 1578.)

8

Substantial evidence must support the imposition of any disability. (See *Conservatorship of Amanda B.* (2009) 173 Cal.App.4th 1380, 1382.)

Appellant contends the imposition of the disabilities in the instant case was not supported by substantial evidence. She asserts that no evidence *specifically* relating to her ability to enter into contracts or transactions over $50, her ability to drive, or her right to possess firearms was adduced at the hearing, and "The only evidence related to appellant's ability to give consent to medical treatment was that appellant was completely cooperative with her medication." This last point is incorrect. As discussed earlier, although there was evidence that appellant cooperated with her Haldol regimen, there was also evidence that regimen was instituted because she had failed to take prescribed medication. And there is no requirement that the imposition of disabilities may be supported only by evidence specifically relating to those disabilities. Rather, we apply "the usual rules" of appellate review and "'presume in favor of the judgment every finding of fact necessary to support it warranted by the evidence' [citation]." (*George H.*, *supra*, 169 Cal.App.4th at p. 165.) For the reasons set forth below, we find that substantial evidence supported the court's imposition of the disabilities.

### *Possession of Firearms*

To support a limitation on a conservatee's ability to possess a firearm, the court must find, and the court here found, "that possession of a firearm or any other deadly weapon by the person would present a danger to the safety of the person or to others." (§ 8103, subd. (e)(1).) There was evidence in the instant case that appellant held the paranoid delusional belief that persons at the board and care home conducted unwanted "brainwave" surgery on her, and that she was unhappy with the board and care home based on the delusional belief that the home was operating a prostitution ring. These delusional beliefs, and the resulting antipathy they caused appellant to feel toward others, supports the finding that appellant would present a danger to others and therefore should be prohibited from possessing firearms.

9

*Holding a Driver's License*

The evidence of appellant's paranoid delusions also supports the restriction on her right to drive. The trial court reasonably could conclude that as a result of these delusions, appellant would be a danger to herself or others if she were allowed to operate a motor vehicle upon public roads.

*Entering into Contracts and Transactions Over $50*

Appellant was also under the delusion that her attorneys were paying for an apartment for her. This unsupported belief that she had resources she did not actually have indicates appellant did not understand her financial situation, leaving her vulnerable to financial exploitation by others, and supported the restrictions on appellant's right to enter into contracts and transactions over $50.

*Consenting and Refusing Consent to Medical Care*

As demonstrated earlier, the court reasonably could conclude that appellant had refused to take medication in the past, medication was necessary to keep her stabilized, and she was currently complying with the Haldol regimen and remaining stabilized only because others were ensuring that she kept her Haldol injection appointments. This evidence supports a finding that appellant was not competent to make intelligent decisions regarding medical treatment.

**DISPOSITION**

The order reappointing the conservator and the order imposing special disabilities are affirmed.