Filed 3/27/14  Conservatorship of Robert G. CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| Conservatorship of the Person of **ROBERT G.** | |
| **RANDY MORRIS, as Conservator, etc.,** | |
| **Petitioner and Respondent,** | **A138994** |
| v. | |
| **ROBERT G.,** | **(Alameda County** |
| **Objector and Appellant.** | **Super. Ct. No. 93-037836)** |

The trial court, after a bench trial, found appellant Robert G. "gravely disabled as a result of a mental disorder" and appointed a conservator for him pursuant to Welfare and Institutions Code section 5350.  Appellant contends the trial court's finding of grave disability — defined as being "unable to provide for his . . . basic personal needs for food, clothing, or shelter" (*id*., § 5008, subd. (h)(1)(A)) — is not supported by substantial evidence.  Appellant further contends the trial court's imposition of certain legal disabilities is not supported by substantial evidence.  We affirm.

BACKGROUND

In February 2013, the Alameda County Public Guardian-Conservator (respondent) petitioned for appointment of a conservator for appellant and sought the imposition of certain disabilities.  In March, after an evidentiary hearing on the petition, the court found appellant gravely disabled and appointed a conservator for one year.  The court also

1

revoked appellant's privilege to possess a driver's license, and his rights to enter into contracts exceeding $58 and to possess a firearm.[1] Appellant timely demanded a trial on the issue whether he was gravely disabled (Welf. & Inst. Code, § 5350, subd. (d)), and a bench trial was held in April.

Appellant and his treating psychiatrist were the only witnesses at trial. Their combined testimony established the following background history. Appellant has had conservators appointed at least two previous times. Appellant resided at Napa State Hospital for three years, until the spring of 2012. At that time, he was discharged from Napa State Hospital into a board and care facility. He remained at that facility until, according to appellant, he was thrown out. Appellant stated he then lived at a motel for about five or six days, at which point he was arrested for "hugging a girl." The charges were dropped and appellant was sent to John George Psychiatric Hospital on a Welfare and Institutions Code section 5150 hold. He remained at John George Psychiatric Hospital for about four to six weeks before being admitted to Napa State Hospital. Appellant had been at Napa State Hospital for approximately one month at the time of the trial.

Appellant was the first witness. When asked whether he believed he has a mental disorder, appellant replied he has "mental telepathy," explaining: "The Bible says that when you pray, God answers your prayers, correct? I mean, people pray, and I don't even have to. All he has to do is think about me, or I have to see him, and I'm connected to him. They start talking to me. I never hear a voice. I hear my own voice come back, but it changes through every single person I talk — it talks through me. And I've got over the last — the whole last, I don't know, 20 years, I adopted six million people."

Appellant testified he did not believe he was bipolar, but believed he suffered from depression. When asked if he had been diagnosed with schizophrenia, he replied: "What is schizophrenia?" Appellant did "[n]ot necessarily" need the medications currently prescribed to him. If released from the hospital, he would take Abilify. When asked

---

[1] At a previous hearing, the court granted respondent's petition for authority to consent to the involuntary administration of psychotropic medications.

whether he had ever discontinued medication against his doctor's orders, he responded: "Only because — against my doctor — number one, who is Tor? What is T-o-r-c-h-e-r? Who is Cher? Is that Sonny and Cher? Who is Tor? I'm Captain Tor. Who is D-o-c? Doc Tor. Who Doc? The only Doc Tor that's ever been is Teresa Diane Calman, but then again, it was me many more times than she was even a dream."

Appellant testified he was living at a motel or a motel was holding his room,[2] "[b]ut the whole story is, I'm looking to get to rent a room, or I'm looking to go to my castle right now." When asked where his castle is, he replied, "Well, which one? I'm going to Los Palmas so nobody can come near me, but I'm taking about 100 girls and a bunch of friends with my kids." Appellant later testified that if discharged he would stay at a specific motel using his Social Security Disability Insurance, which is paid to a designated payee.

Dr. Noorulain Aqeel testified next, as an expert in psychiatry on the issue whether appellant was gravely disabled. Dr. Aqeel, a psychiatrist at Napa State Hospital, had been treating appellant for approximately one month, and had reviewed appellant's medical records. Appellant's diagnosis is schizoaffective disorder, which is "a combination of schizophrenia . . . with depression or mood effect." Schizoaffective disorder "has affects on [a] person's ability to think, to calculate, . . . and also causes problem[s] in the cognition, working memory, the ability to deal with stress and their understanding and their perception." Appellant experienced auditory hallucinations, believed he was God and wrote the Bible, and "believes he has castles and has a bag with $2 trillion." Appellant also got angry and had loud outbursts.

Dr. Aqeel testified appellant "has poor insight into his mental illness." Moreover, his history shows a pattern of not taking medications, and it was a "struggle to convince him to take medications." Appellant repeatedly told Dr. Aqeel "he does not need medication, he's fine, all he need[s] is Abilify." Dr. Aqeel did not consider Abilify effective for appellant and had switched him to a different medication. Dr. Aqeel

---

[2] Appellant later acknowledged he was currently residing at Napa State Hospital.

3

believed appellant "can't take medication" outside of a facility and, absent medication, he will experience "more symptoms."

In Dr. Aqeel's opinion, appellant was not able to provide for his basic needs: food, clothing, and shelter. Dr. Aqeel explained he believed appellant lacked the ability to do so because of "his mental faculty and symptomology." When pressed for a more specific explanation, he replied: "He was like on food that he know[s] how to cook. Fine. He said he will buy clothes from the store, that's reasonable, but I was not sure how he would contemplate where he would live. And how he could negotiate with his word, with a lot of issues and things with his limited resources and understanding, because he had been on conservatorship for a long period of time."

Dr. Aqeel provided additional testimony regarding appellant's ability to provide shelter. Appellant told Dr. Aqeel he would get a room if released from the hospital; when Dr. Aqeel asked where he would get the room, appellant replied, " 'I have property, I have castles, I have all this property[,] . . . I own this place, and I have a bag of $2 trillion, I pay $2 trillion a month, I can get anywhere.' " Dr. Aqeel did not think appellant was capable of interacting with apartment managers or others to rent or acquire a place to live, because appellant was "still having delusions, hallucinations, ongoing psychotic symptoms."

At the conclusion of the trial, the trial court found appellant was unable, because of a mental disorder, to provide for his basic personal needs for food, clothing, and shelter, and therefore found appellant gravely disabled. The court issued a judgment appointing a conservator through March 19, 2014, and revoking appellant's privilege to possess a driver's license, and his rights to enter into contracts exceeding $58 and to possess a firearm. This appeal followed.

DISCUSSION

I. *"Gravely Disabled"*

A conservator "may be appointed for any person who is gravely disabled as a result of mental disorder." (Welf. & Inst. Code, § 5350.) A person is "gravely disabled" for this purpose if he or she, "as a result of a mental health disorder, is unable to provide

4

for his or her basic personal needs for food, clothing, or shelter." (*Id.*, § 5008, subd. (h)(1)(A).) "In order to establish that a person is gravely disabled, the evidence must support an objective finding that the person, due to mental disorder, is incapacitated or rendered unable to carry out the transactions necessary for survival or otherwise provide for his or her basic needs of food, clothing, or shelter. [Citation.] The public guardian must prove the proposed conservatee is gravely disabled beyond a reasonable doubt. [Citation.]" (*Conservatorship of Carol K.* (2010) 188 Cal.App.4th 123, 134 (*Carol K.*).) "[G]rave disability can be based on an inability to provide for food, clothing, *or* shelter. It does not require a finding that a proposed conservatee cannot provide for [his/her] food, clothing, *and* shelter." (*Id.* at p. 135.)

"In reviewing a conservatorship, we apply the substantial evidence standard to determine whether the record supports a finding of grave disability. The testimony of one witness may be sufficient to support such a finding. [Citation.] We review the record as a whole in the light most favorable to the trial court judgment to determine whether it discloses substantial evidence. Substantial evidence, which is evidence that is reasonable, credible, and of solid value, also includes circumstantial evidence." (*Carol K., supra,* 188 Cal.App.4th at p. 134.)

Appellant contends the trial court's finding he was unable to provide for food, clothing, and shelter was not supported by substantial evidence.[3] We need not decide whether substantial evidence supports the findings with respect to food and clothing, because we conclude the finding with respect to shelter is so supported, and that finding is sufficient to support the judgment. (Welf. & Inst. Code, § 5008, subd. (h)(1)(A); *Carol K., supra,* 188 Cal.App.4th at p. 135.)

Dr. Aqeel testified appellant had delusions that he owns castles and other real estate, and was unable to interact with property managers or others regarding shelter due to his delusions, hallucinations, and other psychotic symptoms. The trial court could reasonably infer from this testimony either appellant would fail to seek shelter due to a

---

[3]  Appellant does not challenge the finding he suffers from a mental disorder.

delusional belief he owned castles and other real estate or, even if he did seek shelter, he would be unable to secure shelter because his delusions and hallucinations would prevent him from successfully conducting the interactions and transactions necessary to do so. This testimony thus provides substantial evidence supporting the trial court's finding appellant was unable to provide shelter. (*Carol K., supra,* 188 Cal.App.4th at p. 134 [grave disability can be proven by evidence proposed conservatee is "unable to carry out the transactions necessary for survival or otherwise provide for his or her basic needs of food, clothing, or shelter"].)

Appellant argues Dr. Aqeel's conclusion — that appellant was unable to provide for shelter due to his mental condition[4] — was not based on facts. To the contrary, it was based on the circumstances that appellant suffered from the delusion he owned castles and other real estate, and that appellant experienced other delusions, as well as hallucinations and other psychotic symptoms.

Appellant emphasizes the lack of evidence he failed to provide shelter in the past. Appellant cites no authority such evidence is necessary to support the judgment. Such a requirement would be particularly inappropriate in the present case, where appellant spent all or nearly all of the previous four years in hospitals and a board and care facility, and therefore had little or no need to provide shelter for himself.

Appellant argues he secured a motel room for five or six days and was therefore able to provide shelter for himself. However, the only evidence of this was appellant's own testimony. Even if uncontradicted, the trial court could find this testimony not credible. (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1463 [" '[s]o long as the trier of fact does not act arbitrarily and has a rational ground for doing so, it may reject the testimony of a witness even though the witness is uncontradicted' "].) Because we must review the record in the light most favorable to the judgment, we presume the trial court

---

[4] Appellant notes Dr. Aqeel testified he believed the definition of grave disability involved "a reasonable plan to provide food, clothing, and shelter." However, Dr. Aqeel also testified appellant lacked, "at this point in time, . . . the ability to provide for his basic needs for food, shelter, and clothing." The trial court adhered to the statutory formulation in making its findings.

did not credit appellant's testimony on this issue. (*Carol K., supra,* 188 Cal.App.4th at p. 134.)

Appellant argues the lack of shelter alone does not prove an inability to provide shelter, citing *Conservatorship of Smith* (1986) 187 Cal.App.3d 903 (*Smith*). In *Smith*, although the conservatee had no home address and stayed outside a church on which she was delusionally fixated (*id.*, at p. 906), her treating psychiatrist testified "her cognitive intellect and most of her personality was intact and, despite the disorder, she could feed and clothe herself and provide for her own place to live" (*id.* at p. 907). In contrast, Dr. Aqeel's testimony was not simply that appellant lacked shelter, but that he could not provide for shelter because of his delusions, hallucinations, and other psychotic symptoms. (See *Carol K., supra,* 188 Cal.App.4th at p. 136 [distinguishing *Smith* in case where "the court had before it testimony that [the proposed conservatee] lacked the ability to provide for her own shelter"].)

Finally, appellant contends, even assuming there is evidence of an inability to provide for shelter, there is no evidence this inability presented a physical danger to appellant. To the extent such physical danger is constitutionally required before an individual may be involuntarily committed to a mental institution (see *Doe v. Gallinot* (1979) 486 F.Supp. 983, 991 (*Gallinot* ), affd. (9th Cir. 1981) 657 F.2d 1017), it is implicit in a finding of inability to provide for one's basic needs. *Gallinot*, cited by appellant, expressly so recognized: "California's 'gravely disabled' standard . . . implicitly requires a finding of harm to self: an inability to provide for one's basic physical needs." (*Gallinot*, at p. 991; see also *ibid.* [" '[t]he threat of harm to oneself may be through neglect or inability to care for oneself ' "].)[5]

---

[5]   Appellant also cites *Smith*, where the court, finding the evidence did not prove the conservatee gravely disabled, noted that "[h]er refusal to seek shelter is not life threatening." (*Smith, supra,* 187 Cal.App.3d at p. 910.) However, in *Smith*, as discussed above, the conservatee's psychiatrist testified she *was* able to obtain food, clothing, and shelter. In contrast, Dr. Aqeel testified appellant *was not* able to provide for shelter.

II. *Legal Disabilities*

" 'If a person is found gravely disabled and a conservatorship is established, the conservatee does not forfeit legal rights or suffer legal disabilities merely by virtue of the disability. [Citations.] The court must separately determine . . . the disabilities imposed on the conservatee . . . . [Citations.] The party seeking conservatorship has the burden of producing evidence to support the disabilities sought . . . .' [Citation.]" (*Conservatorship of George H.* (2008) 169 Cal.App.4th 157, 165 (*George H.*).)

Appellant contends the disabilities imposed — restrictions on his privilege to possess a driver's license, and his rights to enter into contracts exceeding $58 and to possess a firearm — are not supported by substantial evidence. Appellant points to the lack of testimony or other evidence presented at the trial specifically addressing these disabilities. We reject this contention.

*George H.* is instructive. There, following the filing of a conservatorship petition, a hearing on the petition was held. The public guardian filed a report in support of the petition, which, among other things, recommended that certain disabilities be imposed, and set out background information regarding the conservatee supporting imposition of the disabilities. George H. requested a jury trial on the "gravely disabled" issue, and a date for trial was set. "Pending trial, the court appointed the public guardian conservator of [George H.'s] person and estate, and made the orders concerning disabilities which the public guardian had recommended." (*George H., supra,* 169 Cal.App.4th at p. 160.) The jury determined George H. was gravely disabled, and, in the judgment, the trial judge imposed the conservatorship and the disabilities. (*Id.* at p. 165.)

Like appellant, George H. argued on appeal that the imposition of the disabilities should be overturned. George H. contended the record reflected no specific statement of the court's reasons for imposing the disabilities. We agree with the *George H.* court's rejection of this argument: no "specific, on-the-record statement of the reasons" for imposing the disabilities is required. (*George H., supra,* 169 Cal.App.4th at p. 165.) In reviewing a trial court's imposition of disabilities, "we follow the usual rules on appeal [citation] and 'presume in favor of the judgment every finding of fact necessary to

8

support it warranted by the evidence.' [Citation.]" (*Ibid.*) So long as substantial evidence supports the trial court's determination, we uphold it.

At the March hearing on the petition, a declaration from psychiatrist Edward Lim, submitted in lieu of testimony, stated: appellant is incapable of operating a motor vehicle because "he becomes confused and angry easily . . . [and] may hit someone or crash the car out of confusion"; appellant "should not possess firearms or other deadly weapons, as he becomes prone[] to acting violently on his paranoid del[u]sions . . . [and] was evicted for being violent towards others in the facility"; and, appellant "is incapable of entering into contracts . . . [because he] does not weigh information presented to him and [is] del[u]sional and grandiose, believing that he has more resources than he actually has."

In addition, substantial evidence presented at trial supports the disabilities imposed.[6] Specifically, the evidence showed appellant was delusional, experienced auditory hallucinations, and was prone to angry outbursts, justifying the trial court's finding appellant could not safely operate a motor vehicle. (*George H., supra,* 169 Cal.App.4th at p. 166 ["evidence that [the] appellant suffered delusional beliefs and auditory hallucinations[] supported the order suspending [the] appellant's driving privilege"]; see also Veh. Code, § 12806, subd. (c) [driver's license may be refused to person with a "mental disability, disease, or disorder which could affect the safe operation of a motor vehicle"].) The same evidence supports the trial court's finding appellant's possession of a firearm "would present a danger to the safety of [appellant] or to others." (Welf. & Inst. Code, § 8103, subd. (e)(1); see also § 5357, subd. (f).)

With respect to appellant's ability to contract, at the trial Dr. Aqeel testified to appellant's delusions involving his financial status, including that he possesses a " '[h]uge amount of real estate' " and " 'a bag of $2 trillion.' " This evidence, in addition to the evidence of appellant's other delusions and auditory hallucinations, supports the

---

[6] Appellant cites to *Conservatorship of Walker* (1989) 206 Cal.App.3d 1572, 1578, in which the court noted "[t]he better practice is for the conservator to disclose, by the questions asked or the argument made, the evidence relied upon to support special disabilities . . . ." Although we agree this is the better practice, we nonetheless conclude substantial evidence presented at the trial supports the disabilities imposed here.

trial court's restriction of appellant's right to enter into contracts over $58.  (*George H.,*
*supra,* 169 Cal.App.4th at p. 166 ["evidence that [the] appellant suffered delusional
beliefs and auditory hallucinations[] supported the order suspending [the] appellant's . . .
right to contract."]; see also Civil Code § 1556 ["persons of unsound mind" are not
capable of contracting].)

DISPOSITION

The judgment is affirmed.


 

_____

SIMONS, J.


We concur.


_____

JONES, P.J.


_____

BRUINIERS, J.