Filed 11/3/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| Conservatorship of the Person of S.A. | B302038 |
| _____ | (Los Angeles County |
| Y.A., as Conservator, etc., | Super. Ct. No. ZE042237) |
| Petitioner and Respondent, | |
| v. | |
| S.A., | |
| Objector and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Mark S. Priver, Judge Pro Tempore.  Affirmed.

Jean Matulis, under appointment by the Court of Appeal, for Objector and Appellant.

Sarah M. Javaheri, under appointment by the Superior Court, for Petitioner and Respondent.

_____

S.A. appeals reappointment of her conservator under the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.) ("the Act").  S.A. also attacks the court's order that she can be medicated against her will.  We affirm.  Undesignated statutory citations are to the Welfare and Institutions Code.

I

On September 13, 2019, Y.A. filed for reappointment as conservator for her adult daughter, S.A.  (We refer to S.A. and Y.A. by their initials to protect S.A.'s privacy.  (§ 5325.1, subd. (b).))  Y.A. asked the court to continue Y.A.'s authority over S.A., including Y.A.'s authority to force S.A. to take psychotropic medications.  Y.A. correspondingly asked the court to override S.A.'s right to refuse medication.

S.A. asked for a bench trial, which the court held on October 17, 2019.  S.A. was 33 years old at trial.

Two witnesses testified:  Dr. Alete Arom and S.A.

Arom testified first.  She interviewed S.A. the morning of the trial and reviewed S.A.'s charts and records.  S.A. did not challenge Arom or move to exclude her as unqualified.  Neither side questioned Arom about her credentials.  We grant S.A.'s uncontested request to notice materials showing Arom is a licensed psychologist—a fact Y.A. does not dispute.

Arom testified S.A. had symptoms of schizophrenia.  S.A. "has a complicated set of ideas about what reality is to her." Arom said S.A. asserted that S.A. was not her name and that her true name is completely different.  This name has initials "M.R." S.A. denied she had a mental illness and believed instead she had anemia.  S.A. told Arom the one with schizophrenia was not S.A. but rather Y.A.:  S.A.'s mother and conservator.

Arom described S.A.'s beliefs about her family. Y.A. had kidnapped S.A. S.A.'s true parents were movie stars Michelle Pfeiffer and Michael Keaton. Y.A. is from India but S.A. denied her Indian heritage. When Arom testified about S.A.'s beliefs, in open court S.A. interjected, "I have American features." (The reporter's transcript misattributes this statement to Arom. In her respondent's brief, Y.A. attributes the statement to S.A.—a fact S.A. does not dispute.)

Arom testified S.A. thought the month was December. In fact it was October.

Arom discussed S.A.'s plans for shelter. Under her guardianship, she had been residing at View Heights Convalescent Hospital. Arom described a discussion she had with S.A. about board and care facilities: "She does not believe she has a mental illness and therefore she does not like the idea of staying there. Then she decided she certainly could not stay there because a requirement for those types of facilities is [to] take medication. And she is not willing to take the medication." Arom explained that, if S.A. were not on a conservatorship, S.A.'s plan was to return to a place where she used to live, to stop taking medication, and to get a job in fashion. Based on her observations of S.A., Arom opined this plan was not viable.

Arom discussed S.A.'s medication. Doctors prescribed Clozaril for S.A. S.A. would stop taking the medication if she were unsupervised. S.A. believed Clozaril darkened her skin, causing her to have a darker complexion than Michelle Pfeiffer and Michael Keaton, whom S.A. insisted were her true parents. S.A. was "quite symptomatic" even on this medication and would be "much worse" without it. Arom opined S.A. would be unable to plan for her own food, clothing, and shelter without medication.

3

When Arom testified about medication, S.A. again interrupted in open court, saying, "Those drugs don't like me." (The reporter's transcript misattributes this statement to "Attorney1.")

Arom described S.A.'s beliefs as delusions. A delusion is a false, fixed belief. At trial and on appeal, S.A.'s attorneys do not dispute S.A.'s beliefs are delusions. S.A.'s appellate attorney writes S.A. "may have atypical views."

Y.A.'s attorney asked Arom whether S.A. had enough mental capacity to make an informed refusal of medication. Arom said no.

S.A. did not object to any of Arom's testimony. Nor did she cross-examine Arom.

S.A. also testified. S.A.'s attorney asked whether S.A. agreed with her diagnosis or had any mental health conditions, whether she took medication, and whether she thought she needed medication. The attorney asked S.A., "Is there anything else you would like to tell the court why you feel you should not be on a conservatorship?" The attorney also asked S.A. about her plans for housing if she were not on a conservatorship.

Much of S.A.'s testimony confirmed Arom's views. S.A. said her name was not S.A. but the name with initials "M.R." She had anemia, not paranoid schizophrenia. Doctors prescribed her unnecessary and unhelpful medication.

S.A. began to read a letter she wrote for the court. S.A.'s letter asserted her parents were Michael Keaton and Michelle Pfeiffer. Y.A. had kidnapped her, had schizophrenia, and was an illegal alien from India. The "best decision" would be to contact Homeland Security about Y.A., who owned "illegal property in houses in Mexico and Nevada."

The court broke in and asked S.A. to explain her plan if she did not have a conservatorship. S.A. responded, "I need to mention this about Homeland Security."

Then S.A. explained, a "clear answer" was to put her in housing "at UCLA through Huntington Memorial Hospital." At this trial, there was no evidence S.A. had any connection or history with either UCLA or Huntington. S.A. offered no concrete details about this proposal.

S.A. also testified she could finish her degree, get a job, "and look for [her] real family." S.A. did not explain what this degree was. Nor did she testify to employment experience, to what sort of work she hoped to get, or to how she planned to search for this job.

S.A. said she had discussed housing with someone from the Department of Mental Health but she had "not had the interview yet." S.A. returned to reading her letter and said, "One thing before you make your decision, is that [they] assigned me with [a] [non] white doctor."

Y.A. did not cross-examine S.A.

S.A.'s counsel "submitted on [S.A.'s] plan for self care" and did not otherwise present a closing argument.

The court found beyond a reasonable doubt S.A. remained gravely disabled and reappointed Y.A. as S.A.'s conservator. It ordered several powers and disabilities, which it listed by number. This list included "8a" and "10." The same day as the trial, the court issued a written order specifying the powers and disabilities. Power 8a continued Y.A.'s power to require S.A. to accept psychotropic medications. Disability 10 continued the corresponding disability: it removed S.A.'s right to "refuse or consent to treatment related specifically to [her] being gravely

5

disabled." The order stated that, as to each power or disability, the court "finds that the evidence presented establishes that the power or disability is necessary to the care, custody, maintenance and protection of the conservatee."

## II

The court's reappointment of a conservator was proper. Substantial evidence showed S.A. was gravely disabled.

A court may establish or renew a conservatorship under the Act if a person is gravely disabled, meaning the person, as a result of a mental health disorder, is unable to provide for her or his basic personal needs for food, clothing, or shelter. (§§ 5350 & 5008, subd. (h)(1)(A).) The petitioner must prove the conservatee is gravely disabled beyond a reasonable doubt. (*Conservatorship of Roulet* (1979) 23 Cal.3d 219, 225–226.) Testimony of one witness can suffice to support a finding of grave disability. (*Conservatorship of Carol K.* (2010) 188 Cal.App.4th 123, 134.)

We review the whole record in favor of the judgment below to determine whether there was substantial evidence S.A. was gravely disabled beyond a reasonable doubt. (*Conservatorship of Walker* (1989) 206 Cal.App.3d 1572, 1577 (*Walker*).) Substantial evidence includes circumstantial evidence and reasonable inferences flowing from it. (*Ibid.*)

Evidence conservatees (1) lack insight about their mental illness, (2) would not take medication without the support of a conservator, and (3) could not provide for themselves without medication is enough to support a court's finding of grave mental illness. (*Walker, supra,* 206 Cal.App.3d at p. 1577.)

Arom's and S.A.'s testimony demonstrated S.A. lacked insight about her mental illness. S.A. did not believe she had

6

schizophrenia and instead thought she had an unrelated medical issue.

S.A. would not take medication without the support of a conservator. S.A. denied needing medication. She did not want it. Everyone agrees she would not take medication without a conservatorship.

S.A. could not provide for herself without a conservatorship and without medication. Substantial evidence supported this finding. Arom testified S.A., if unmedicated, would not be able to make and carry out a viable plan for food, clothing, or shelter.

Evidence showed, for example, S.A. could not provide for shelter without a conservatorship. Based on her meeting with S.A., Arom believed S.A.'s plans for housing were not viable. S.A. had some views about how she might find housing. But, after a bench trial, we review the court's determinations about witness credibility with extreme deference. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.) Here we indeed do defer to the court's implied finding that Arom was more reliable and more credible than S.A.

S.A. incorrectly claims Arom's testimony was speculation. Arom's opinions were based on her observations of S.A., not on speculation. S.A. argues she expressed unwillingness to go to board and care facilities only because Arom falsely told her such facilities always require residents to take medication. This argument slights our duty to make inferences in favor of the judgment. (*Walker*, *supra*, 206 Cal.App.3d at p. 1577.) Arom testified S.A. disapproved of living in a board and care facility because those facilities are for people with mental illnesses and S.A. denied having a mental illness. An inference in favor of the judgment is S.A. would not agree to live in such a facility. This

7

evidence supported a finding that S.A. could not provide for her own shelter.

Sufficient evidence supported the court's finding that S.A. was gravely disabled and that a conservatorship was proper in this case.

### III

The involuntary medication order was proper because substantial evidence established S.A. was unable to make informed treatment decisions.

A competent adult has the right to refuse medical treatment, including the right to refuse psychotropic drugs. (*In re Qawi* (2004) 32 Cal.4th 1, 14 (*Qawi*).) A court's determination that a conservatee is gravely disabled does not, by itself, justify imposing an order allowing involuntary medication. (§ 5005; *Riese v. St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303, 1312–1313 (*Riese*).) Conservators may seek added authority over conservatees, including a limitation on the conservatee's right to refuse medical treatment. The statute refers to medication authority as imposing a "disabilit[y]" on the conservatee. (§ 5357, subd. (d).)

A court may order involuntary medication if clear and convincing evidence shows the conservatee is incompetent to give or withhold informed consent. (*Riese*, *supra*, 209 Cal.App.3d at pp. 1322–1323.) In *Qawi*, the California Supreme Court approved *Riese* and *Keyhea v. Rushen* (1986) 178 Cal.App.3d 526, 535, which listed factors a court must consider to determine whether a conservatee is incompetent. (*Qawi*, *supra*, 32 Cal.4th at pp. 17–19.) The factors include whether the conservatee lacks mental capacity rationally to understand the nature of the

medical problem, the proposed treatment, and its attendant risks. (*Id*. at p. 18.)

S.A. quotes the decision in *Carter v. Superior Court* (2006) 141 Cal.App.4th 992, 1000 to the effect that orders for involuntary medication of antipsychotic drugs are "disfavored." This is not the term we would use. Schizophrenia can be a devastating illness. Medication can be the only effective treatment. A symptom often is delusional thinking, including about the costs and benefits of medication. Under appropriate conditions, involuntary medication of antipsychotic drugs can be a major benefit to the gravely disabled patient.

We must determine whether the record contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this clear and convincing standard of proof. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005, 1009.) We do not reweigh evidence. (*Id*. at p. 1008.) We presume in favor of the judgment the findings of fact necessary to support it. (*Conservatorship of George H.* (2008) 169 Cal.App.4th 157, 165 (*George*).)

At the close of trial and in its written order, the trial court ordered the power and disability allowing involuntary medication. The court's order stated it found "the evidence presented establishes that the power or disability is necessary to the care, custody, maintenance and protection of [S.A.]." Thus the court found involuntary medication was necessary for S.A.'s care and protection.

Substantial evidence supported a finding that S.A. lacked the mental capacity rationally to understand the nature of her mental illness, her medication, and the risks of stopping her medication. S.A. denied having schizophrenia and rejected any

9

need for medication. She thought her medication caused her skin to darken. This belief is related to her delusion Michael Keaton and Michelle Pfeiffer were her parents. Arom testified S.A. lacked mental capacity to make an informed refusal of her medications. This evidence supported the court's order.

In her opening brief, S.A. incorrectly says Arom "did not specifically address incapacity to make treatment decisions." During oral argument, she conceded Arom did address incapacity. Indeed, at trial, Y.A.'s attorney asked Arom whether S.A. had "sufficient mental capacity to make an informed refusal of medication" and Arom said no. Arom testified directly on this point.

S.A. erroneously says Arom was unqualified to testify about S.A.'s competency. Because Arom was a psychologist and thus could not prescribe medication, S.A. claims Arom could not provide "competent evidence" about incapacity. To the extent this argument is about the admissibility of Dr. Arom's testimony, S.A. waived the argument by failing to object at trial. (Evid. Code, § 353.) On the merits, S.A. cites no legal authority for the notion only medical doctors may testify in this situation. We are aware of no such authority. Courts of Appeal have relied on testimony of psychologists in this same context. (E.g., *Conservatorship of D.C.* (2019) 39 Cal.App.5th 487, 492 (*D.C.*); *George, supra*, 169 Cal.App.4th at pp. 160 & 166.)

S.A.'s sole argument against the competence of psychologists in this setting is the rule that the "practice of psychology shall not include prescribing drugs . . . ." (Bus. & Prof. Code, § 2904.) S.A. does not explain why this fact should be decisive. S.A. does not offer theoretical or empirical arguments to support her proposed conclusion.

Arom's credentials did not preclude her from helping the court make what is a legal and not a medical finding. (See *Riese*, *supra*, 209 Cal.App.3d at p. 1324 [involuntary medication "involves moral and ethical considerations not solely within the purview of the medical profession, and must be measured by the social consensus reflected in our laws"].)

Arom did not recommend specific medications or dosages. Rather, she provided an opinion about whether S.A. could understand her mental illness and medication. This psychologist was competent to testify on these matters.

S.A. says the court failed to make explicit findings, oral or written, about S.A.'s incapacity to make rational decisions about her medical treatment. There is no statutory requirement the court make an express finding of decisional incapacity. (*K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 179.) If sufficient evidence supports the need for involuntary medication, the lack of express reasoning on the record is not enough to support reversal. (*D.C.*, *supra*, 39 Cal.App.5th at p. 495.) The evidence here was sufficient.

On October 26, 2020, S.A. gave notice of the new decision *People v. Ford* (October 23, 2020, B300043) __Cal.App.5th__ (*Ford*). This decision does not alter our analysis. Ford pleaded guilty by reason of insanity to a criminal charge, went to a state hospital, and the People petitioned to extend his involuntary commitment. (*Id.* at [p. 3].) Without Ford's presence, the trial court found Ford incompetent to waive his right to a jury and permitted Ford's counsel to waive this right. (*Id.* at [pp. 4–5].) The People did not dispute that the court erred by finding Ford incompetent in his absence. (*Id.* at [p. 9].) The *Ford* court found this error prejudicial. (*Id.* at [pp. 10–11].)

11

S.A.'s case is entirely different. It is about medication, S.A. was present at trial, and Y.A. does not concede error. The relevant statute in *Ford*, Penal Code section 1026.5, required the trial court to advise Ford in court and on the record of his right to a jury. (*Ford*, *supra*, B300043 at [p. 8]; *People v. Tran* (2015) 61 Cal.4th 1160, 1165–1166.) In S.A.'s case, there was no missing advisement. S.A. identifies section 5326.2, but that section describes requirements for voluntary informed consent and does not mandate the court to advise S.A. about anything.

We stand by our position in *D.C.* that it is good practice for a trial court to make a finding of incompetency and explicitly to apply the factors *Riese* set forth. (*D.C.*, *supra*, 39 Cal.App.5th at p. 495.) A written order would suffice.

**DISPOSITION**

We affirm.


WILEY, J.


WE CONCUR:



BIGELOW, P. J.



GRIMES, J.

12